JOEL P. HUSTON et al. in Equity *vs.* CHARLES F. DODGE et als.

Lincoln.   Opinion November 22, 1913.

*Bill in Equity. Construction. Income. Jurisdiction. Life Estate. Residuary Estate. Revised Statutes, Chapter 20, Section 13. Termination of Trust. Testator. Trustees. Vacancy. Will.*

1. A trustee has no interest in the construction of the will under which he is acting, except as it concerns his powers and duties in the administration of his estate.

2. When a testator, by his will, gave his wife "ten thousand dollars, to have and to hold the same, and the income thereof, only during her natural life," the income became hers absolutely, but she had no right to spend the principal.

3. The beneficiary under a testamentary trust having died before the testator, the trust never became operative, and the trustees did not take title to the trust fund.

4. When a testator in his will provided that "in case of the death or resignation of either of my trustees, I ask that the proper court appoint to fill the vacancy whoever may be nominated by the surviving trustees," the power of nomination was not limited to the trustees named in the will, but extends to their successors.

5. When a testator, by his will, directed the trustees of the residuary estate to set apart a certain sum to be used forever in beautifying and caring for his burial lot, the town in which the lot is situated may be appointed trustee of the fund by the Probate Court, under the provisions of Revised Statutes, chapter 20, section 13 and the fund may be transferred to it.

On report. Bill sustained. Decree in accordance with the opinion.

This is a bill in equity, brought by the trustees of the residuary estate, under the will of Isaac Dodge, late of Newcastle, in the County of Lincoln, praying for a construction of the will and for instructions. The heirs of Isaac Dodge, the beneficiaries under the will and the executor of the will of Arabella Dodge, widow of testator, are parties defendant. Answers by defendants were filed and replication thereto by plaintiffs. At the close of the hearing, the cause was, by agreement of parties, reported to the Law Court upon bill and answer, it being agreed that the facts stated in the bill are true, upon which case the Law Court is to determine the rights of the parties.

The case is stated in the opinion.

*Arthur S. Littlefield,* for plaintiff.

*William T. Hall,* for defendants.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

SAVAGE, C. J. Bill in equity brought by the trustees of the residuary estate under the will of Isaac Dodge, late of Newcastle, praying for a construction of the will and for instructions. The heirs of Isaac Dodge, the beneficiaries under the will, and the executor of the will of his widow, Arabella Dodge, are parties defendant. The case comes up on report. No evidence is reported, but it is stipulated that "the facts stated in the bill are true."

Some of the questions presented in the prayer of the bill do not concern the administration of the trust by the trustees, but relate to

matters which are as yet contingent, in regard to which the trustees may never be called to act; or, if they are, possibly not until after the lapse of many years; or they relate to matters which concern only the heirs among themselves. Such questions are now moot questions.

This court has jurisdiction under R. S., ch. 79, sect. 6, Par. VIII upon a bill by testamentary trustees, to instruct them as to the proper mode of executing their trust, and to construe a will so far as necessary for that purpose. A trustee has no interest in the construction of the will under which he is acting except as it affects his powers and duties in the administration of his trust. *Burgess* v. *Shepherd,* 97 Maine, 522. And we do not think it wise, nor within the intent of the statute, to assume jurisdiction to advise trustees, and to construe wills for their guidance until the time comes when they need instructions. The fact that the question may arise sometime in the future is ordinarily not enough. Such a question should not be decided until the anticipated contingency arises, or at least until it is about to arise, until it is imminent. Then if the trustee needs present advice to know how to meet the contingency, it will be given to him. Then the parties interested in the issue can be heard under the conditions and circumstances as they may exist at that time. They should not be prejudiced. Nor should there be any judgment until there is occasion for it.

Isaac Dodge died January 28, 1895, leaving a large estate. In his will he made many bequests and devises, some to his wife, some to his brothers and sisters, and some to his nephews and nieces. Some of the bequests were absolute, some for life only, and some were in trust. By item 29 he disposed of his residuary estate in these words: "All the rest, residue and remainder of my estate both real, personal and mixed, including all rights of reversion and remainders, I give, devise and bequeath to Thomas C. Kennedy, Arabella Dodge, both of Newcastle, Me., and William A. McKenney of Boston, Mass., but in trust nevertheless for the uses and purposes hereinafter named, viz.: If the necessity arises that either of my brothers or sisters, nephews or nieces, who may survive me, may require a larger amount of money than I have by this will given and bequeathed to them, in order to insure in sickness or old age their proper care, victualing, clothing, nursing and medical attendance,

it is my will that my said trustees, Thomas C. Kennedy, Arabella Dodge, and William A. McKenney, at once fully provide for their necessities, from this amount so willed and held in trust for them."

Thomas C. Kennedy named as trustee declined to act. Ezekiel Ross was appointed in his stead. Ross resigned, and the plaintiff Huston was appointed. Arabella Dodge has deceased, and no successor has been appointed in her place.

At the argument, the heirs and beneficiaries expressed a strong desire to have the trust terminated, and the trust fund distributed, and the trustees professed themselves not averse to it. But whether this can be done, we have no occasion to consider, since this question is not raised by the bill.

We will now consider the questions asked seriatim.

1. By his will, Item 2, the testator gave to his wife, Arabella, "ten thousand dollars, to have and to hold the same, and the income thereof, only during her natural life." This bequest was paid to Mrs. Dodge wholly or largely by the assignment and transfer of western mortgage loans, selected by her. These loans were collected by her, and the proceeds so mingled with her own absolute property, that at the time of her death it was impossible to identify the property received, or the proceeds thereof. Nor was it possible to determine what disposition she had made of the same. The question is whether this sum of ten thousand dollars should be collected from the estate of Mrs. Dodge, and be accounted for by the trustees as a part of the residuary estate in their hands. Ordinarily such a question as this should not be answered, except in some appropriate proceeding for collection, between the parties interested. But since one of the trustees here is himself the executor of Mrs. Dodge's will, a fact which may prove embarrassing so far as this question is concerned, we will answer the question.

This clause in the will apparently does not give a clear expression of the testator's intention. He gave both principal and income to his wife, but for life only. There being no specific provision for the remainder over, it would fall into the residuum. *Torrey* v. *Peabody,* 97 Maine, 104. But the testator did not in terms prescribe the purpose of the gift, the uses to which it might be put, nor any limitation on the uses. Still we think that he had an intention, and that it is not difficult to discover it. Though he made no distinction

in terms, and though his wife was "to have and to hold" both the principal and the income during life, yet we think the difference in the nature and incidents of principal and of income suggests, and in this case requires, a difference in interpretation. In the gift of a mere life estate with remainder over, there is no implication of a right to spend and diminish the principal. The right to do so must rest upon more than a mere implication from the gift. But a gift of income from a life estate is absolute, unless the use be limited. If the testator had given his wife merely the income of a fund for life, without limiting the uses, the income as she received it would have been hers absolutely, and she would have had a life estate in the fund, but not the right to spend it. *Sampson* v. *Randall,* 72 Maine, 109. In the clause in question, interpreted by the foregoing rules, he gave her a life estate in the fund, and gave her absolutely the income from it during her life. Did he by his will go any further? We think not. He gave her ten thousand dollars to have and to hold during her life, in order that she might gather therefrom the income which he intended should be hers. He did not express any intention that the principal was to be hers to spend or absorb. In a previous paragraph he had given her twenty thousand dollars, with other property, absolutely; and in a later clause, for life, the house and lot where they lived. We are persuaded that he meant to give her in addition, only the income of ten thousand dollars, and to put in her hands the means of producing it. This ten thousand dollars therefore belongs to the residuary estate of Isaac Dodge. It is immaterial whether Mrs. Dodge mingled this money with her own, or spent it. Though she had a life estate, she was trustee of the remainder, and her estate is accountable for it to the trust residuary estate.

2. By Item 3 of the will, the testator gave his wife the house and lot where they lived, "to have and to hold the same during her natural life." She having deceased, the question now is whether upon her death the reversion passed to the testator's heirs, or fell into the residuum. Undoubtedly the latter. No resort to construction is necessary. The will itself provides that all rights of reversion and remainders shall be included in the residuary estate.

3. By Item 5, the testator gave one thousand dollars to trustees "for the use and benefit" of his sister, Rachel Reed. The trustees

were to keep the fund invested, and to pay to the beneficiary, from time to time such sums as her necessities or condition might require. Mrs. Reed died before the testator. The question is whether the trustees under this trust took title or not. They did not. The trust never became operative. *Harlow* v. *Bailey,* 189 Mass., 208; 40 Cyc.. 1818.

4. The testator by Item 21 devised to his nephew, Bert E. Dodge, a certain farm for life, remainder over to Bert's son, Isaac W. in tee. But the will further provided that if Isaac should die before his father, the remainder should go to the then living children of Bert, in fee. The questions are where will the remainder go, in case Isaac and all the other children of Bert shall die before Bert dies? also, in case Isaac only shall die before Bert, whether the remainder will go to Bert's children living at the time of his death, or to those living at the time of Isaac's death. These questions cannot be answered now. In the latter question the trustees have no interest whatever; in the former, no interest at present, and none at all, except whether the remainder may at some future time fall into the residuum. The contingencies suggested by the devise have not yet arisen. Perhaps none of them will ever arise. So far as the bill shows, Bert and Isaac and all the "other children" are now alive. Besides, the "other children" have a right to be heard. They are not parties to the bill. Indeed, for aught that we know, or can prophesy, some of the children, who may be living at the time of Isaac's death, may not yet be born.

5. By Item 22, the testator devised a farm to his nephew, Manfred C. Dodge, for life, remainder over "to the then living children" of Manfred. The question is, where will the remainder go in case Manfred shall leave no children surviving him? This question is premature. The contingency has not arisen. Whether Manfred will leave children surviving him or not, no one now knows.

6. By Item 26, the testator gave five thousand dollars to the "Second Congregational Church of Newcastle," with directions that it be invested, that the principal should not be encroached upon or diminished, and that the income should be "applied yearly to aid in having the gospel preached and the sacred scriptures expounded in the Second Congregational Church edifice in Newcastle," and not

diverted to any other purpose. The will further provides that if the Church "suffers or allows this gift and bequest to be diverted or used for any other purpose than herein willed and directed, then it is my will that the above gift and bequest revert to my heirs for their use and benefit forever." We are asked to say whether the Church is required to render an account to the testator's heirs, or to the trustees of the residuary fund,—whether the income must be used in the year in which is accumulates, whether in case the principal becomes impaired, it must be made good out of the income, and whether if *at any future time* there shall be a forfeiture of said bequest, the same will become a part of the residuary estate, or go directly to the heirs. We answer that the testator gave the fund to the Church. It is not and cannot become a part of the residuary estate. The trustees have nothing whatever to do with the administration of the fund. That is a matter which concerns only the Church and the testator's heirs.

7. By Item 27 the testator directed the trustees of the residuary fund "to set aside the sum of two hundred dollars from my (his) estate, and safely invest the same; the interest of which sum of two hundred dollars to be used forever in beautifying and keeping my burial lot, in the Haggett Cemetery, from year to year in good repair and neat appearance." The trustees desire to know if they may turn over the amount of this bequest to the town of Newcastle, in which we understand the Haggett Cemetery is situated, to be held, invested and used for the purpose specified. We think they may. The will does not expressly impose upon the trustees any duty, except to set apart the fund and invest it, though undoubtedly they are impliedly empowered to execute the entire trust. There is nothing, however, to show that the testator placed any special confidence or trust in the personal discretion of the trustees. Moreover he must have foreseen that the time would come when the duties of this trust, intended to be a perpetual one, would not and could not be performed by the persons whom he named as trustees, for necessarily in the course of time the residuary fund would be distributed and that trust terminated. By Revised Statutes, chapter 20, section 13, a town "without giving bond therefor may be appointed by the probate court testamentary trustee for the purpose of holding forever in accordance with the provisions of this section

and the terms of the devise any fund desired for the purposes afore-
said," that is, for insuring proper care and attention to a burial lot.
We think this provision is applicable to the circumstances of this
case. If the town is appointed trustee, it simply works a change of
trustees, and that is not improper. And upon the appointment by
the Probate Court of the town of Newcastle as testamentary trustee
of this fund, these trustees will be authorized, and are hereby
authorized, to transfer the fund to the town for the purposes named
in the will.

8. We are asked next to say whether the residuary estate is given
for the benefit of all the nieces and nephews of the testator, or only
of those who are otherwise mentioned in the will, and whether the
trustees are the sole and absolute judges as to the bestowal of bene-
fits under the residuary item. We think the will answers the first
question. The trust was created expressly for the benefit of brothers
or sisters, nephews or nieces surviving him whose necessities may
require *"a larger amount of money than I have by this will given
and bequeathed to them."* This, we think, includes only those
nephews and nieces to whom he had made bequests in the will. The
purpose evidently was to give them, if their necessities required it,
the benefit of "a larger amount of money" than he had otherwise
bequeathed to them. This language does not embrace those to whom
he had given nothing.

The interpretation of the "necessities" of these beneficiaries for
the relief of which he thus provided is somewhat limited by the
terms of the will. The necessity which will justify the giving of
"a larger amount of money" to beneficiaries arises when it is needed
to insure their proper care, victualing, clothing, nursing and medical
attendance "in sickness and old age." The will relates to the indi-
vidual necessities of the beneficiaries. Some may need more, some
less, and perhaps some none at all. The trustees are limited to the
relief of necessities, the necessities specified, "of sickness and old
age." The will invests them with the right to use their discretion,
to use their own judgment, in determining whether or not the neces-
sities, such as are specified in the will, exist or not in fact, and as
to how much relief may properly be given. And so long as they
act, within their powers, honestly and in good faith, their determi-
nation is conclusive. They may use, but must not abuse, their trust.

9. The ninth paragraph of the prayer in the bill asks if the trust in the residuary estate exists and is valid, how long it shall continue, to whom the property remaining on the termination of the trust will go, and what are the duties of the trustees upon the termination of the trust. That the trust exists is manifest. And in argument no one has questioned its validity. We can see no reason why it should be questioned. The trust will continue until its expressed purposes have been fully accomplished, unless all the beneficiaries shall sooner release or waive their right to claim under it.

To whom distribution shall be made when the trust is terminated is a question that does not press for an answer. And, for reasons already stated, we think it should not be answered until an exigency arises which may make the answer useful to the trustees.

10. Finally, we are asked to construe Item 30, which provides that "in case of the death or resignation of either of my trustees, I ask that the proper court appoint to fill the vacancy whoever may be nominated by the surviving trustees." One question is whether the power of nomination, in case of vacancy by death or resignation, is limited to the original trustees named in the will, or whether it may be exercised by their successors. We think the power is unlimited and extends to successors. The testator thought best to have this estate administered by three persons. The estate was large, and the administration might call for the exercise of sound judgment and discretion in many instances. To that end, as we may suppose, he wished for a board that would be independent, and whose members would be likely to act in harmony with one another. That result he conceived, as we think, would be more certainly accomplished by confiding the power of nomination to the surviving trustees who best knew the situation and needs of the estate than to leave the appointment entirely to what might be contending claims and arguments of the numerous beneficiaries, whose interests were such as might naturally lead to opposing views. If this was his purpose, we think he must have intended the power of nomination to be continuous, otherwise it might soon be exhausted by the death or resignation of the named trustees. When there is a vacancy, as there is now, it is the duty of the remaining trustees to nominate a proper person to be appointed to fill the vacancy. It should be added however that the appointing tribunal will not be bound by the nomina-

tion. The court, in its discretion, may disregard the nomination, if the interests of the estate require it.     .

Another question is, what tribunal has jurisdiction to appoint successors? Revised Statutes, chapter 70, section 17, provides that "when a trustee under a written instrument declines, resigns, dies or is removed . . . the probate court or supreme judicial court, shall, after notice to all persons interested, appoint a new trustee to act alone or jointly with the others, as the case may be." A will is a written instrument within the meaning of this statute. For if not, there would be no occasion for giving Probate Courts jurisdiction to make appointments. See *Williams* v. *Cushing,* 34 Maine, 370. While the Supreme Judicial Court may, and in proper cases will assume jurisdiction to appoint testamentary trustees, the more appropriate tribunal is the Probate Court which has statute jurisdiction over testamentary trusts and trustees. R. S., ch. 70, sects. 1-12. And this is particularly true in a case where the Probate Court has already taken jurisdiction of the trust estate, by allowing the accounts of trustees, and so forth.

. The heirs in their answer, and in argument, deny that one of the plaintiffs, Huston, has been legally appointed trustee to fill a vacancy. But the stipulation in the report is, as already recited, that "the facts stated in the bill are true." And one of the facts is "that the said Joel P. Huston was by the probate court for said county of Lincoln duly and legally appointed to said trust." This question, therefore, is not open to controversy in this case.

Reasonable solicitors' fees and expenses, to be paid out of the residuary estate, will be allowed by the Justice who settles the final decree, to all parties who have appeared.

*Bill sustained.*
*Decree in accordance*
*with the opinion.*