FIRST PORTLAND NATIONAL BANK
AS TRUSTEE UNDER THE WILL OF CHARLES R. CRESSEY
*vs.*
ALICE F. RODRIQUE, ET AL.

Cumberland.   Opinion, June 9, 1961

278

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, DUBORD, SIDDALL, JJ. SULLIVAN, J. did not sit.

OPINION: DUBORD, J.

*Drummond & Drummond,* for plaintiff.

*Arthur D. Welch,* Portland, Me.
*Waterhouse, Spencer & Carroll,* Biddeford, Me.
*William B. Mahoney,* Portland, Me.
*Vincent L. McKusick,* Portland, Me.
*Daniel E. Crowley,* Biddeford, Me.
*Gerald C. Nason,* Biddeford, Me.
*Edward F. Dana,* Portland, Me.
*M. Donald Gardner,* Portland, Me.
*Miss Sigrid E. Tompkins,* Portland, Me.

for defendants.

DUBORD, J. This cause is before us on report in accordance with the provisions of M.R.C.P. 72 (a).

The complaint was instituted in the Superior Court within and for the County of Cumberland by the First Portland National Bank, which later changed its name to First Na-

tional Bank of Portland, as successor trustee under the will of Charles R. Cressey, late of Portland, Maine.

The complaint seeks an interpretation and construction of the will and codicil of Charles R. Cressey, together with an inter vivos trust agreement entered into between Alice F. Cressey, widow of Charles R. Cressey and the residuary beneficiaries under the will of Charles R. Cressey. The complaint requests the court for instructions as to present distribution of the income from the assets now held in trust and for final distribution of the assets upon the death of the surviving widow.

Charles R. Cressey executed his last will and testament, which is now before us for consideration on March 12, 1926, and he executed a codicil thereto on July 14, 1927. The changes in the will made by the codicil have no bearing upon the present issues.

Charles R. Cressey's first wife died and he subsequently married Alice Faustina O'Neil.

Charles R. Cressey was survived by his widow and four children by a prior marriage: George F. Cressey, Helen C. Stanwood, Marcia C. Passage and William R. Cressey, as well as by a foster daughter, Eleanor Roberts.

Marcia C. Passage died May 5, 1937; Helen C. Stanwood died May 3, 1944; George F. Cressey died February 2, 1946; and William R. Cressey died August 12, 1958.

In this action the personal representatives of all four children of the testator are named as parties defendant. Two of the children, Marcia C. Passage and William R. Cressey, died leaving no issue surviving. Helen C. Stanwood was survived by two children, Carolyn S. Whiting and George Philip Stanwood, both of whom are named as parties defendant. George F. Cressey was survived by one child, W. Churchill Cressey, who is named as a party defendant.

All three of these grandchildren of the testator themselves have children who are named as parties defendant. These great grandchildren are minors. George F. Cressey 2nd, is the son of W. Churchill Cressey. Anne C. Whiting and Webster S. Whiting are children of Carolyn S. Whiting, and George K. C. Stanwood and Diana M. Stanwood are children of George Philip Stanwood. These great grandchildren are also named as defendants and are represented by a guardian ad litem.

All unborn issue of George F. Cressey and all unborn issue of Helen C. Stanwood are named as defendants and are represented by a guardian ad litem. The foster daughter, Eleanor Roberts, who is still living was also made a defendant as well as the surviving widow, Alice F. Cressey, now Alice F. Rodrique. All defendants appeared in the action and are represented by counsel.

Prior to the marriage between Charles R. Cressey and Alice Faustina O'Neil, they entered into an ante-nuptial agreement under the provisions of which Charles R. Cressey agreed with Alice Faustina O'Neil that his estate would be bound to her for an annual payment of $1500.00 during her lifetime, in lieu of her rights by descent; and the said Alice Faustina O'Neil under the provisions of said agreement waived all other rights in the estate of her intended husband. In like manner, Charles R. Cressey released his intended wife of all claims against her estate.

The issues appear to revolve around the provisions of the second and fourth paragraphs of the will of Charles R. Cressey and the inter vivos trust previously referred to, which was executed on September 3, 1936.

The second paragraph of the will of Charles R. Cressey read as follows:

"SECOND: All of the shares of the capital stock of Cressey & Allen, which I may own at the time

of my decease, I give and bequeath to my son George, to have and to hold in trust nevertheless, upon the following terms and conditions: To manage, control and vote the said stock as he deems best; and from the net income arising from said stock to pay annually to my wife, Alice Fostina Cressey, during the term of her natural life the sum of Fifteen Hundred Dollars ($1500), payable in quarterly installments of Three Hundred Seventy-Five ($375) each, and to pay the balance of said annual income as follows: To my son William, the income from one hundred (100) shares of said capital stock; and the income then remaining to pay in equal portions to my daughters, Helen Cressey Stanwood and Marcia Cressey, and my said sons William Cressey and George Cressey. I direct that my Trustee, if he for any reason deems it advisable, shall have the power and authority to sell and dispose of the said shares of capital stock so held in trust by him; and the proceeds thereof shall be reinvested and held by him during the lifetime of my wife, in trust according to the terms above set forth. At the decease of my said wife if the trust shall have been in operation and effect for a period of twenty-five years, or if the stock of Cressey & Allen shall have been sold by my Trustee, it (the Trust) shall thereupon terminate and the principal of said trust fund shall be distributed as follows:—first; to my son, William one hundred (100) shares of the capital stock of said Cressey & Allen or if the same shall have been sold the equivalent money value thereof; second; the remaining portion of said trust fund shall be distributed in equal portions to my said children, Helen, Marcia, William and George, issue of a deceased child to take its parent's share by right of representation; in the event that any of my said children shall have died prior to the termination of said trust leaving no children living or issue of a deceased child, his or her portion of said trust fund on the termination of said trust, and the income from the trust during its continuance shall be divided equally among his or

her brothers and sisters; but in the event that the decease of my said wife shall take place before the said trust shall have been in operation and effect for a period of twenty-five years and the principal of trust shall at her death consist of the shares of capital stock of Cressey & Allen, the said trust shall, except as hereinafter provided, continue until the said twenty-five years shall have elapsed, the amounts heretofore paid to my said wife being thereafterward divided equally among my said children, Helen, Marcia, William and George; at the expiration of the said twenty-five years the trust shall terminate, unless sooner terminated as hereinafter stipulated, and the principal of the trust fund shall be distributed to the said parties and in the manner provided for its distribution at the death of my wife the same occurring after the twenty-five year period; but in the event that my said Trustee shall after the decease of my said wife and prior to the expiration of the twenty-five year period, deems it advisable to sell and dispose of the said shares of capital stock so held in trust by him, the trust shall thereupon immediately terminate and the proceeds thereof shall be distributed to the said parties and in the said manner as hereinabove provided."

The fourth paragraph reads as follows:

"FOURTH: All the rest, residue and remainder of my property, whether real, personal or mixed, and wheresoever situate, of which I may die seized and possessed, I give, devise and bequeath to my son, George, for him to distribute between his sisters, Helen and Marcia, and our former ward, Eleanor Roberts, who was brought up in our family, and his brother William and himself in such amounts and proportions as he deems just and proper . . . . . My said son shall have full and complete authority to make the distribution called for in this clause, including the right and power to convey real estate by good and sufficient deed without other or further authorization. His judg-

ment as to the method and amount of said distribution shall be final and conclusive on all parties."

Without discussing in detail at this time the provisions of the 1936 trust agreement, in substance all of the beneficiaries under the will of Charles R. Cressey assigned to the testamentary trustee all of their interest in the estate, and particularly their interests in the assets covered under the provisions of the fourth paragraph of the will, in order to insure there might be sufficient income to pay to the surviving widow the annual amount of $1500.00 as provided in the ante-nuptial agreement.

By the second paragraph of the will, the testator created a trust, the corpus of which consisted solely of 655 shares of the capital stock of Cressey & Allen, which the testator owned at the time of his death. All 655 shares of this stock were sold in 1948 and so the corpus of the trust created under the second paragraph of the will now consists of the proceeds of the sale.

By the terms of Charles R. Cressey's will (and also under the 1936 trust), George F. Cressey, son of Charles R. Cressey, served as trustee until his death in 1946. Thereupon the First Portland National Bank, now First National Bank of Portland was appointed as successor trustee.

For purposes of administration the trust assets have been kept in three separate trusts by the First National Bank of Portland:

(1) A so-called Article SECOND Trust A-1, the corpus of which consists of the proceeds from the sale of 100 shares of Cressey & Allen stock; (2) a so-called Article SECOND Trust A, the corpus of which represents the proceeds of the remaining 555 shares of Cressey & Allen stock; and (3) a so-called Article FOURTH Trust B, the corpus of which is the residue of Charles R. Cressey's estate, held in trust under the terms of the 1936 trust agreement. Accumulated income of the individual trusts is also held by the trustee.

Serious disputes have now arisen relating to the disbursement of income which has already accumulated from the assets in the trusts created under the will of Charles R. Cressey, as supplemented by the 1936 trust agreement, distribution of future income during the lifetime of the surviving widow, and final distribution of the assets following the death of the widow.

While all parties are in agreement as to the right of the surviving widow to receive the amount of $1500.00 annually during her lifetime, conflicting contentions and arguments are made by the various defendants relating to other issues. It is contended by some that the provisions of the second paragraph of the Charles R. Cressey will are invalid, because they are in violation of the rule against perpetuities. Other defendants contend there is no such violation.

All of the defendants, with the exception of the surviving widow, join in the prayers of the plaintiff that this court, at this time, give to the trustee the instructions which it has requested.

The first issue for our determination, therefore, is whether or not we will do so.

Briefly the trustee asks the court to determine to whom and in what proportions it should pay the income accumulated under Article SECOND Trust A, Article SECOND Trust A-1, and Article FOURTH Trust B. It also requests a determination concerning payment of the annual net income received each year during the lifetime of Alice F. Rodrique, the widow; and finally the trustee requests instructions concerning the distribution of the principal upon termination of the three trusts.

Under the provisions of Section 4, Par. X, Chapter 107, R. S., 1954, the Supreme Judicial Court is authorized to determine the construction of wills; and in cases of doubt, the mode of executing a trust.

While there is a variance in the decisions of this court as to when the facts of a given case are such as to elicit answers to propounded questions, the law appears to be well settled that in a proper case, this court will not refrain from answering questions relating to construction of wills and the administration of testamentary trusts even though actual litigation has not arisen.

The first decision of this court upon the issue appears to be that in *Baldwin, Admr.,* v. *Bean, et al.,* 59 Me. 481. In that case the court said:

> "It is an old maxim, that an ounce of prevention is worth a pound of cure; and this is as true in law as in medicine. To prevent litigation is better than to end it. If by a bill in equity the parties in interest can all be brought before the court at one time, not only may a multiplicity of suits be avoided, but a just result much more certainly obtained. \* \* \* \* \* \* Influenced by these considerations, we think the statute, conferring upon this court jurisdiction in equity to determine the construction of wills, ought to be liberally interpreted; and that in all cases of doubt, the parties should be allowed to have the opinion of the court, whether any actual controversies have arisen or not."

The next case is *Burgess* v. *Shepherd,* 97 Me. 522, 55 A. 415, wherein the court, while recognizing the doctrine laid down in *Baldwin* v. *Bean, supra,* declined to answer upon the theory that the plaintiff executor did not have such interest in the subject matter as to entitle him to answers to his questions.

In *Haseltine* v. *Shepherd, et al.,* 99 Me. 495, 59 A. 1025, can be found an excellent review of prior decisions of this court upon the question.

The court, citing with approval *Baldwin* v. *Bean, supra,* had this to say:

"In the light of the many decisions cited, we think there can no longer be any doubt but that the court has jurisdiction to construe a will upon the bill of a devisee, and to determine the character of the estate received by him under a devise, and the extent of his powers thereunder, as between himself and other devisees who claim, or may claim, adversely to him. It is not necessary that the claim should be controversial and litigious. It is sufficient, if doubts exist, out of which litigious claims may arise between devisees. Many of the bills referred to have been styled 'amicable bills.' They were cases where doubts existed as to the relative rights of the devisees under a will, as between themselves, and where an adjudication in advance would tend to prevent controversy.

"The benign purpose of the statute, as expressed by Judge Walton in *Baldwin* v. *Bean,* is to prevent litigation, to avoid a multiplicity of suits, or to remove clouds that may rest upon titles, that their owners may be enabled to deal with the property more understandingly, and if need be to sell it for its true value. Chief Justice Peters in *Richardson* v. *Richardson,* 80 Maine, 585, said that a bill under this statute is a privileged suit, and that the ear of the court should be open to it. The purpose of the statute thus happily stated has seemed to guide the court in all of its adjudications from *Baldwin* v. *Bean* until the present time.

"It should be said however that the court will not feel itself bound to answer all questions which can possibly be asked by a devisee. It must appear that the language of the will is such that the parties may reasonably have doubts concerning its true construction. Other parties should not be subjected to the trouble and expense of appearing in court, or the possible hazard of not appearing, in cases where there is no doubt. Again the party asking the questions must have interest in having the questions answered."

The case of *Huston, et al.* v. *Dodge, et al.,* 111 Me. 246,

88 A. 888, has been cited in support of the position that the issues in the instant case are not ripe for answer.

In that case the court said:

> "This court has jurisdiction under R. S., ch. 79, sect. 6, Par. VIII (now Chapter 107, Section 4, Par. X) upon a bill by testamentary trustees, to instruct them as to the proper mode of executing their trust, and to construe a will so far as necessary for that purpose. A trustee has no interest in the construction of the will under which he is acting except as it affects his powers and duties in the administration of his trust. *Burgess* v. *Shepherd,* 97 Maine, 522. And we do not think it wise, nor within the intent of the statute, to assume jurisdiction to advise trustees, and to construe wills for their guidance until the time comes when they need instructions. The fact that the question may arise sometime in the future is ordinarily not enough. Such a question should not be decided until the anticipated contingency arises, or at least until it is about to arise, until it is imminent. Then if the trustee needs present advice to know how to meet the contingency, it will be given to him. Then the parties interested in the issue can be heard under the conditions and circumstances as they may exist at that time. They should not be prejudiced. Nor should there be any judgment until there is occasion for it."

The law enunciated in this decision was followed in *Connolly* v. *Leonard,* 114 Me. 29, 95 A. 269; and in *McCarthy* v. *McCarthy,* 121 Me. 398, 117 A. 313.

In *Moore, et al.* v. *Emery, et al.,* 137 Me. 259, 271, 18 A. (2nd) 781, the court in declining to answer had this to say:

> "With a unaminity seldom found elsewhere in the law, courts have consistently refused during the existence of a particular estate to construe wills in order to determine future rights, and it makes no difference whether the event which may give rise

to a future controversy is certain to happen, as the death of a life tenant, or depends on a state of facts which is contingent and uncertain."

Here follows a long line of decisions of various jurisdictions including *Huston* v. *Dodge, supra,* and the court went on to say:

"A glance at these cases will indicate the reluctance of courts to construe a will in order to decide any question which does not relate to some certain and immediate problem facing either a beneficiary or a fiduciary of an estate."

As late as our opinion in *Fiduciary Trust Co.* v. *Brown, et al.,* 152 Me. 360, 131 A. (2nd) 191, in which we cited *Huston* v. *Dodge, supra,* we declined to answer certain of the questions which had been propounded, and restricted our answers to the rights of only one of the beneficiaries.

In *Rogers* v. *Walton,* 141 Me. 91, 39 A. (2nd) 409, the court, after concluding to answer the questions which had been propounded, distinguished the *Baldwin* v. *Bean* and *Haseltine* v. *Shepherd* cases from *Moore* v. *Emery, supra,* with the following statement:

"The statute giving to the equity court jurisdiction to construe wills should be liberally interpreted to the end that litigation may be prevented, multiplicity of suits avoided, and title to property, both real and personal, promptly settled. *Baldwin* v. *Bean,* 59 Me. 481; *Haseltine* v. *Shepherd,* 99 Me. 495, 59 A. 1025. The plaintiff, as executrix of the will of David Walton who was a beneficiary under the will of his mother, certainly had the right to bring such a bill. To be sure the question of the disposition of the corpus of the trust is not a matter of immediate concern to the trustees. But the reason for the rule laid down in *Moore* v. *Emery,* 137 Me. 259, 18 A., 2d. 781, that the court will not construe a will in order to determine future rights has no application here. The right of the plaintiff at a future time to share in the corpus of the

estate is inextricably interwoven with her claimed present right to the income, and she has besides an immediate problem in deciding whether this right to a share in the principal of the trust should be included as an asset in the inventory of the estate of David Walton. We are met with one other requirement which gives us some concern. This is laid down in *Haseltine* v. *Shepherd,* supra, page 504, in the following language: 'It must appear that the language of the will is such that the parties may reasonably have doubts concerning its true construction.' We do not quite understand how such doubt can exist here. The language seems reasonably plain to this court even though it does not to the parties, or at least to the defendants, who have refused to make payments of the income to the executrix of their brother's estate. But we concede that their claim is honest that the will is ambiguous; and in the interest of ending a controversy and determining the rights of the parties, we shall not be too rigid in limiting our authority to act on the prayer of this bill."

The latest decisions of this court upon the point in issue are *Gannett, et al.* v. *Old Colony Trust Co., Trustees, et al.,* 155 Me. 248, 153 A. (2nd) 122, and *Swasey, et al.* v. *Chapman, et al.,* 155 Me. 408, 156 A. (2nd) 395.

In both of these cases, it was the conclusion of this court that the questions should be answered.

In *Gannett* v. *Old Colony Trust Co., supra,* we said:

"That the court has on occasion refrained as a matter of judicial policy from prematurely deciding issues has been recognized. *Fiduciary Trust Co.* v. *Brown,* 152 Me. 360. It has never been questioned, however, that the court has power to act in an appropriate case before a contingency occurs. *Haseltine* v. *Shepherd,* 99 Me. 495, 503. We are satisfied that this is such a case."

In *Swasey* v. *Chapman, supra,* we said:

"There are sound reasons for deciding these and certain other issues raised herein at the present time. *Fiduciary Trust Co.* v. *Brown, et al.,* 152 Me. 360, 131 A. (2nd) 191; *Gannett, et al.* v. *Old Colony Trust Co.,* 155 Me. 248, 153 A. (2nd) 122."

The questions we are asked to answer are listed in detail in the complaint, but the basic questions may be outlined as follows:

(1) Whether or not any interest created under the second paragraph of the will is void under the rule against perpetuities and, if so, what are the consequences of such violation or violations; (2) who, and in what proportions, are entitled to receive the net income from and after August 12, 1958, the date of William R. Cressey's death from Article SECOND Trust A, from Article SECOND Trust A-1, and from Article FOURTH Trust B, after the annual payment to the surviving widow of $1500.00; and (3) who, and in what proportions, are entitled to receive the principal from the aforesaid three trusts upon the death of the surviving widow?

Upon careful consideration of the matter, we are convinced that the reasons which actuated our refusal to answer some of the questions propounded in *Fiduciary Trust Co.* v. *Brown, supra,* and which prompted similar decisions in other cases, are not applicable to the present case for the reason that the distribution of the residue is inextricably interwoven with the present issue of distribution of income which has accumulated and which will be received during the continuance of the trust; and for the reason that the fiduciary is faced with an imminent problem, which indicates the necessity and desirability of immediate answers. We, therefore, conclude that the propounded questions should be answered, and we pass to the primary issue which next requires a determination, and that is whether or not any or all of the interests created

under the second paragraph of the will of Charles R. Cressey are void as in violation of the rule against perpetuities.

The classic formulation of the Rule against Perpetuities is that of Professor Gray:

> "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

The rule is more fully expressed in the Model Rule Against Perpetuities Act, recommended by the National Conference of Commissioners on Uniform State Laws:

> "No interest in real or personal property shall be good unless it must vest not later than twenty-one years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies." I Scott on Trusts, § 62.10, Page 540.

> "The rule against perpetuities was established to prevent post mortem control of property. It forbids the creation of estates which are to vest, or come into being, upon a remote contingency, and where the vesting of an estate or interest is thereby unlawfully postponed.

> "The rule against perpetuities concerns only remote future and contingent estates and interests. It applies equally to legal and equitable estates, to instruments executing powers, as well as to other instruments.

> "What then is a perpetuity?

> "It is a grant of property wherein the vesting of an estate or interest is unlawfully postponed. The law allows the vesting of an estate or interest, and also the power of alienation, to be postponed for the period of a life or lives in being and twenty-one years and nine months thereafter; and all restraints upon the vesting that may suspend it beyond that period are treated as perpetual restraints and void, and estates or interests which are dependent on them are void.

> "The rule against perpetuities has no application
> to vested estates or interests. It concerns itself
> only with the vesting, the commencing of estates,
> and not at all with their termination. It makes no
> difference when such a vested estate or interest
> limited terminates." *Pulitzer* v. *Livingston*, 89
> Me. 359, 363, 364, 365.

Application of the rule against perpetuities has confused
and perplexed members of the Bench and Bar for genera-
tions. Professor W. Barton Leach of Harvard Law School
was not exaggerating when he said:

> "The Rule against Perpetuities is a technicality-
> ridden legal nightmare, designed to meet problems
> of past centuries that are almost nonexistent to-
> day. Most of the time it defeats reasonable dis-
> positions of reasonable property owners, and often
> it defeats itself." 67 Harv. L. Rev. 1349.

It is contended by only two of the defendants, the estate
of William R. Cressey and Eleanor Roberts, that the provi-
sions of the second paragraph of the will of Charles R.
Cressey are in conflict with the rule against perpetuities.
All other defendants say there is no violation and they ad-
vance in support of their contention, the theory adopted in
*Springfield Safe Deposit & Trust Company* v. *Ireland*
, (Mass.) 167 N. E. 260, to the effect that where an estate
is limited on alternative contingencies, one of which of-
fends the statute against perpetuities while the other does
not, the invalid provision does not affect the validity of the
other if the event happens upon which the taking effect of
such other is contingent.

A study of the provisions of the second paragraph of
the will now under consideration indicates that the four
named children of the testator and their issue (or their
brothers and sisters) were given an interest which comes
into possession upon the happening of two alternative con-
ditions, either (1) upon the death of the widow, if the
trust has been in effect for twenty-five years, (or if the

Cressey & Allen stock shall have been sold,) or, (2) if not, upon a later event, either when twenty-five years shall have elapsed, or the stock shall have been sold.

It is clear that the second contingency is in violation of the rule because all lives in being at the death of the testator could have been extinguished immediately by death and still the trust might continue for more than twenty-one years.

If the termination of the trust is to be determined by contingency number one, the death of Alice, the estate would vest in interest and possession upon the death of the widow, a life in being at the time of the death of the testator. It is argued by those who support the validity of the provisions of the second paragraph of the will that the first contingency is valid because the widow is still living and that it will be her death that will mark the time of termination of the trust and the vesting of the various interests.

Although the issue presented has been determined in other jurisdictions in accordance with the contentions of those who would sustain the validity of the trust now before us, the question appears to be one of first impression before this Court.

The facts in *Springfield Safe Deposit & Trust Co.* v. *Ireland* 268 Mass. 62, 167 N. E. 261, are strikingly similar to those in the instant case. In that case, the testator, an attorney at law, died in 1891. By his will he gave his wife a legal life estate in his entire property. Upon his wife's death he established a trust of all his estate, to pay the net income to his daughter Jeannie Gordon (Ireland) during her life, and

"at her decease, in equal shares to her children then living, the lawful issue of any her child then deceased taking by representation their parent's share: and in the month of January 1922, or of the

first January thereafter, after the decease of said
Jeannie Gordon, to convey in fee simple, transfer
and pay over the same, in equal shares, to her
then living children and the lawful issue of any
her child then deceased, such issue taking by rep-
resentation their parent's share, as tenants in com-
mon."

The Massachusetts Court in discussing the alternative
contingencies upon which the trust would terminate sum-
marized them as follows:

"It was the apparent purpose of the testator to
have the trust end and the principal of the trust
conveyed and distributed in the month of January,
1922, if his daughter were then dead; but if she
were then alive, that she should continue to re-
ceive the income, and the termination of the trust
should be postponed to the January following her
death."

Thus, the two contingencies in the *Springfield* case were
(i) the death of Jeannie Gordon, and (ii) the expiration
of the period from 1891 to January 1922. The later to occur
of the alternative contingencies was the one that would
operate to determine the time of the ending of the trust.
The life tenant in the *Springfield* case, namely, Jeannie Gor-
don (Ireland) survived until 1928. The Massachusetts Su-
preme Judicial Court held that the remainder interest to be
distributed upon the termination of the trust was valid un-
der the rule against perpetuities because it was the valid al-
ternative contingency which had eventuated.

The full statement of the Court in the *Springfield* case
on the "alternative contingencies" point was as follows:

"But the testator created an alternative contin-
gency by which, in the event of the daughter con-
tinuing to live beyond the first designated date,
the estate would vest in the January following her
death in 'her then living children and the lawful
issue of any her child then deceased.' Upon the

happening of this wholly distinct and separate alternative event the estate would vest within a period not more than twelve months from the date of death of the testator's daughter—a limitation which, if standing alone, would not be too remote. The principle governing a case where a testator makes a gift over which would be void for remoteness if one contingency happens and would be valid if another independent alternative contingency happens, is stated by Gray, J., in Jackson v. Phillips, 14 Allen, 539, 572, 573: 'If therefore the gift over is limited upon a single event which may or may not happen within the prescribed period, it is void, and cannot be made good by the actual happening of the event within that period. But if the testator distinctly makes his gift over to depend upon what is sometimes called an alternative contingency, or upon either of two contingencies, one of which may be too remote and the other cannot be, its validity depends upon the event; or, in other words, if he gives the estate over on one contingency which must happen, if at all, within the limit of the rule, and that contingency does happen, the validity of the distinct gift over in that event will not be affected by the consideration that upon a different contingency, which might or might not happen within the lawful limit, he makes a disposition of his estate, which would be void for remoteness.' The daughter having survived the date of the void limitation, the estate vested under the valid alternative contingency in Gordon Ireland in January, 1929, approximately eleven months after the date of his mother's death."

The Gordon Ireland referred to in the foregoing quotation from the *Springfield* case was the only son of the life tenant of the trust, Jeannie Gordon (Ireland).

Based upon the opinion in the *Springfield* case, counsel reasons there is no violation of the rule against perpetuities because the widow who is the life annuitant, has in fact survived the date of the void limitation and the trust will terminate and all interests vest not later than her death.

The Massachusetts Supreme Judicial Court as recently as 1952 restated and reaffirmed the "alternative contingencies" rule in *Sears* v. *Coolidge,* 329 Mass. 340, 342-43, 108 N. E. (2nd) 563, 565. See also, 64 A.L.R. 1077; *In Re: Griscom's Estate* (Pa.) 9 A. (2nd) 344, *Merchants National Bank* v. *Curtis* (N. H.) 97 A. (2nd) 207.

See also Vol. VI, American Law of Property, § 24.54 to the effect that:

> "Where a gift is made upon either of two expressed contingencies, one of which must occur, if at all, within the period of perpetuities, and the other of which may not, the gift is valid if the first contingency occurs although it is invalid if the second contingency occurs."

We think the doctrine enunciated and propounded in the *Springfield* case is a salutary one and we adopt it as the law in this jurisdiction. We, therefore, hold that the provisions of the second paragraph of the will of Charles R. Cressey do not violate the rule against perpetuities.

It is argued by counsel for the Estate of William R. Cressey that this doctrine should not be made a part of our decisional law, and that if such was the law before the enactment of Chapter 244, Public Laws of 1955 (§ 27, c. 160, R. S., 1954, as amended), there was no need of such a statute. We conceive of no conflict between the doctrine we have now adopted and this statute.

With the thought in mind that the rule against perpetuities does not apply to vested estates or interests, counsel who support the validity of the provisions of the second paragraph, furnished this court with an exhaustive study of decisions explaining the difference between vested and contingent interests. In view of the decision we have already announced upon this issue, we find it unnecessary to discuss the nature of the interests devised in the will under our consideration.

Neither is it necessary for us to discuss the effect, if any, of the inter vivos trust executed by all interested parties in the year 1936, as an affirmation of the legality and validity of the provisions of the second paragraph.

It has already been indicated that prior to the marriage between the testator and Alice Faustina O'Neil (now Alice F. Rodrique) a valid ante-nuptial agreement was executed between the parties whereby Charles R. Cressey agreed that his entire estate would be bound to his intended wife for an annual payment of $1500.00 during her lifetime. To effectuate this agreement, the testator provided under the second paragraph of his will that from the income of his Cressey & Allen stock, this annual payment should be made to his widow. Apparently, circumstances developed after the death of the testator whereby the income from the Cressey & Allen stock appeared insufficient to meet the testator's obligations. Thereupon, all interested parties, with the desire of giving effect to the wishes and legal obligations of the testator, entered into an agreement of trust on September 3, 1936, the main purpose of the agreement apparently being to charge the entire estate, including the residue, with the payment to the widow of the amount for which the estate was liable.

A detailed explanation of this agreement appears to be unnecessary. However, the agreement recognizes the validity of all of the provisions of the will and there was agreement that the assets represented by the residue should not be distributed during the lifetime of the widow. There is nothing in the trust agreement directly referring to current distribution of the income from the assets in the residue. However, it is of importance and interest to note, as an indication of the intention of the parties to the trust agreement, that prior to the appointment of the present trustee in 1946, this income had been distributed. Moreover, by a supplemental agreement dated January 20, 1945, the then sole remaining beneficiaries apparently lent their approval

to current distribution of the income from the residue. This income has now been accumulated since 1946. It is our opinion that, subject always to prior payment of the annual amount due the widow, that accumulated income from the residue should be distributed to those who are entitled thereto, and in like manner future income be distributed.

Before we are able to answer some of the questions, it is necessary that we determine the intention of the testator.

The recorded opinions of this Court are replete with decisions to the effect that it is a fundamental rule of consideration which is paramount to all others, and which should never be overlooked, that the intention of the testator as declared by the will itself shall be allowed to prevail, unless some principle of law is thereby violated. See *Wentworth* v. *Fernald*, 92 Me. 282, 42 A. 550; *Green* v. *Allen*, 132 Me. 256, 170 A. 504.

> "In construing wills for the purpose of determining this question as well as all others, the intention of the testator is to have a controlling influence in the interpretation of the clause or phrase especially involved in the inquiry, provided no settled rule of law or principle of sound public policy is thereby violated. This intention must be collected from the language of the whole instrument interpreted with reference to the avowed or manifest object of the testator; and all parts of the will must be construed in relation to each other so as to give to every provision its proper field of operation, and to every word its natural and appropriate meaning. Furthermore, in case of ambiguity, 'it has long been well settled and indeed it is a principle so consonant to reason that the only wonder is that it should ever have been questioned, that all the surrounding circumstances of a testator,—his family, the amount and character of his property, may and ought to be taken into consideration in giving a construction of the pro-

visions of this will.'" *Bodfish* v. *Bodfish*, 105 Me. 166, 170; 73 A. 1033.

See also, *Barnard* v. *Linekin*, 151 Me. 283, 286, 118 A. (2nd) 327.

Applying the foregoing rules to the will of Charles R. Cressey, we have no difficulty in determining his intention and the objects of his bounty. It is clear that in setting up the provisions of the trust created under the second paragraph of his will, he had in mind that his Cressey & Allen stock should remain in his blood descendants.

While for the purpose of administration, the assets passing under the second paragraph are divided into two trusts, in reality there is only one trust. The will clearly indicates that the four children of the testator were to share in these assets, and that, in the event, of the death of any of them without issue, their interest would pass to their brothers and sisters, or to the issue of such brothers and sisters to take by right of representation.

The significant clauses in the second paragraph are as follows:

"In the event that any of my said children shall have died prior to the termination of said trust leaving no children living or issue of a deceased child, his or her portion of said trust fund on the termination of said trust, and the income from the trust during its continuance shall be divided equally among his or her brothers and sisters"; and, "issue of a deceased child to take its parent's share by representation."

Counsel for the estate of William R. Cressey argues that if William R. Cressey had a vested interest in the 100 shares, his estate will be entitled to the 100 shares of Cressey & Allen stock, or the equivalent money value thereof. The answer to this contention is that if the interest was vested, then it was subject to divestment upon his death without issue.

We answer the first query as follows:

Marcia C. Passage and William R. Cressey, having died without issue, the owners of a present interest in the trust created under the second paragraph are the children of George F. Cressey and Helen C. Stanwood. W. Churchill Cressey is the son of George F. Cressey. Carolyn S. Whiting and George Philip Stanwood are children of Helen C. Stanwood. Consequently, W. Churchill Cressey is entitled to one-half of all of the income of the trust; and Carolyn S. Whiting and George Philip Stanwood are each entitled to one-quarter of the income, subject, of course, to prior payment of the amount due the widow.

At the termination of the trust, if W. Churchill Cressey is still living, he will be entitled to one-half of the corpus; and in the event of his death prior to the termination of the trust, then his son, George F. Cressey, 2nd, if living, will take the interest of W. Churchill Cressey in the income and principal, subject to proportionate diminution in the event there are other living children born to W. Churchill Cressey before the death of the widow.

In like manner if Carolyn S. Whiting dies before the death of the widow, her interest in the income and principal will go to her children, Anne C. Whiting and Webster S. Whiting, if living, these shares to be subject to proportionate diminution in the event there are other living children born to Carolyn S. Whiting before the death of the widow.

Again, in like manner, if George Philip Stanwood dies before the death of the widow, his interest in the income and principal will pass to his children, George K. C. Stanwood and Diana M. Stanwood, if living, in equal shares, subject to proportionate diminution in the event other living children are born to George Philip Stanwood before the death of the widow.

In the event of the extinguishment by death of the entire line of succession of either George F. Cressey or Helen C. Stanwood, before the widow's death, then the interest of the line extinguished will pass to the living issue in the other line; and in the event of the remote contingency of the complete extinguishment of both lines, before the termination of the trust, the assets bequeathed under the second paragraph will pass as intestate property.

The estates of William R. Cressey, George F. Cressey, Helen C. Stanwood and Marcia C. Passage, are not entitled to receive any of the income from the trust created under the second paragraph of the will, nor are they entitled to receive any of the corpus of said trust.

The foregoing answer disposes of questions arising under the second paragraph of the will. The remaining questions relate to the provisions of the fourth paragraph of the will.

Under the provisions of the fourth paragraph of the will of Charles R. Cressey, he gave all of the residue of his estate to his son, George F. Cressey "for him to distribute between his sisters, Helen and Marcia, and our former ward, Eleanor Roberts, who was brought up in our family, and his brother William and himself in such amounts and portions as he deems just and proper."

It was further provided that the judgment of George F. Cressey as to the method and amount of the distribution should be final and conclusive on all parties.

We have already seen that in order to insure the annual payment to the widow as provided in the ante-nuptial agreement, that the children of Charles R. Cressey, and Eleanor Roberts conveyed in trust to George F. Cressey all of the assets in the residue.

We find the following excerpts in the trust agreement entered into in 1936:

"WHEREAS, it is the intention of the said George F. Cressey, William R. Cressey, Marcia Cressey Passage, Helen Cressey Stanwood and Eleanor Roberts aforesaid, to waive the benefits of said power of appointment and to convey their singular and several interests in said properties both real and personal to said George F. Cressey, but nevertheless in trust for the benefit of said Alice Faustina Cressey to secure to her for and during the term of her natural life the payment of said Fifteen Hundred Dollars in four equal instalments as is in said prenuptial agreement specified, and thereafterwards that the remainder of said property be distributed by said George F. Cressey under said power of appointment by distribution thereof effective as of the day of the death of said Alice Faustina Cressey according to the terms, conditions, and limitations of Clause Fourth of said Will."

"It being the intention of the parties to consolidate all the remaining property of the estate of said Charles R. Cressey into one trust, for the benefit primarily of said Alice Faustina Cressey, and on her death, for the benefit of Helen Cressey Stanwood, Marcia Cressey Passage, Eleanor Roberts, William R. Cressey and George F. Cressey, but, it is provided that on the death of said Alice Faustina Cressey the said rest, residue and remainder of said estate, shall revert to said George F. Cressey, Trustee or his successors under said Will, for him to distribute to said Helen Cressey Stanwood, Marcia Cressey Passage, Eleanor Roberts and William R. Cressey, and to him, said George F. Cressey in such amounts and proportions as the said George F. Cressey deems just and proper but subject always to the terms, conditions, limitations and restrictions contained in Article "Fourth" of said Will."

"And he, said George F. Cressey, in his capacity as Trustee hereunder, and in consideration of the premises, does accept the aforesaid conveyances in trust and the trust conditions, herein and hereof

and covenants and agrees that he, said George F. Cressey, will faithfully and impartially discharge the duties imposed upon him as Trustee by this instrument and said prenuptial agreement, and as well, those assumed by him herein relative to these grantors, under and by virtue of the terms hereof, and said Will, except that he will make no distribution of said properties during the lifetime of said Alice Faustina Cressey."

"And the said George F. Cressey, Trustee under said Will, does hereby further covenant and agree that he will make no distribution of the properties, which were of the estate of said Charles R. Cressey, deceased, testator, except as herein provided, and referred to in Articles "Second" and "Fourth" of the Will of said Charles R. Cressey, during the lifetime of the said Alice Faustina Cressey, and, we, the grantors of the first and of the second parts herein hereunto subscribing for ourselves, our heirs, administrators, executors and assigns, do hereby covenant and agree that we individually and/or severally, will not during the lifetime of said Alice Faustina Cressey, make demand upon said George F. Cressey, Trustee under said Will for distribution of the properties, bequeathed, and devised unto us or either of us under Articles "Second" and "Fourth" of said Will."

In construing the provisions of the fourth paragraph of the will of Charles R. Cressey which relates to the residue, we start out with the premise that the residue devised and bequeathed to George F. Cressey did not constitute a gift to him, but was made for the benefit of the appointees named in the will. See *Fitzsimmons* v. *Harmon*, 108 Me. 456, 81 A. 667.

The real problem is to determine who is entitled to the property, and the income thereof during the lifetime of the widow, in default and exercise of the power of appointment by George F. Cressey.

Various courts appear to have taken different routes to arrive at essentially similar results on this question.

In some jurisdictions, in default of the exercise of a testamentary power, a court of equity will exercise the power, either for the benefit of the named beneficiaries or for the beneficiaries of a resulting trust where the original beneficiaries are indefinite.

There seems to be no reported Maine decision squarely in point, but there are several decisions analogous to it; and it would seem that it is the law in this State that upon default of a power of appointment by the donee, a court of equity will exercise the power, if, according to the provisions of the will, such power is made imperative upon the donee.

> "All of the cases concede that a power is one in trust when the subject of the power is certain, when the objects are certain, and when the power is imperative. In strictness, a mere power is never imperative; it is permissive in character, an authority personal to the donee which imposes no obligation upon him; yet a duty or trust may be imposed in terms of a mere power.
>
> "A power is deemed imperative not merely when expressly made so; but if it appears from the instrument as a whole that an obligation to exercise the power was contemplated by the donor of the power, . . ." 80 A.L.R. 503-504. See also 41 Am. Jur., Powers, § 92, Page 871.

This court has held that, where the donees are insufficiently defined so as to allow an exact execution of the implied trust, the court will attempt to do equity by imposing a resulting trust in favor of the decedent's heirs. In the case of *Fitzsimmons* v. *Harmon,* 108 Me. 456, 81 A. 667, the court held that where the gift had been made to a donee to be distributed among "relatives" the terms of the bequest did not declare a trust sufficiently definite to be executed,

and that, therefore, there would be a resulting trust in favor of the heirs-at-law. Again, in the case of *Haskell* v. *Staples,* 116 Me. 103, 104; 100 A. 148, the gift of the residue was to a Mr. Staples "to be by him distributed and disposed of as he pleases." The court held that because of indefiniteness of beneficiaries a resulting trust occurs by implication of law to either the testator's residuary legatees or next of kin. See also *Buzzell* v. *Fogg,* 120 Me. 158, 113 A. 50.

In the case before us it is clear that there is no need of imposing a resulting trust by implication of law, because the gift was made for the benefit of certain named individuals, who were the children and the ward of the testator. Consequently, the reasons set forth in previous opinions of this court place before us a trust sufficiently definite as to beneficiaries as to allow for execution thereof by the court.

Undoubtedly the power given to George F. Cressey was an imperative one, made with the intention on the part of the testator that the power should be exercised within a reasonable time. If it had not been for the intervening trust agreement which postponed distribution and the exercise of the power until the death of the widow, presumably, if George had not exercised the power within a reasonable time, a court of equity would have had authority to compel him to do so.

In other jurisdictions the courts proceed upon the theory that the failure of the donee of a power to exercise such power, is a breach of trust; and that by reason of this breach of trust the appointive property passes back to the donor or his estate to be held in constructive trust for the benefit of the group of persons who were the presumable appointees.

In still other jurisdictions it is held that there is an implied gift, in default of appointment, to the presumable appointees. This theory is predicated upon the implication that, since the donor of the power had a general intent to

benefit the class designated as appointees and that, therefore, had it occurred to the donor that the power might not be exercised he would have provided for a gift over in default to the designated class equally.

This third theory is the one which has been adopted in the Restatement of the Law under the title "Gifts in Default of Appointment," Property, § 367.

George F. Cressey, the donee of the power, having died prior to the termination of the trust, the question before us is to determine in what proportion the residue should be divided.

. The decided cases appear to hold that upon default of an exercise of a power of this type, the property should be divided equally among the named beneficiaries.

> "Where there is no express gift over in default of appointment the inference is that the donor intended the members of the class to take even though the donee should fail to exercise the power. The inference is that he did not intend that they should take only if the donee should choose to exercise the power. The inference is reinforced where the donor uses mandatory language, as where he directs the donee to exercise the power. Even where he used no such language, the members of the class will ordinarily be entitled to the property. The cases are numerous in which it has been held that the members of the class are entitled to the property in equal shares where the donee of a power to appoint among them fails to exercise the power." I Scott on Trusts, § 27.1 Page 217.

> "As a general proposition, it seems clear that the appointive property should pass, in such a situation, to the designated class of permissible appointees. The donor of the special power of appointment has (1) a general intent to benefit the members of the specified class of permissible appointees and (2) an intent that the apportioning of the appointive property within the class shall

be within the discretion of the donee of the power. The fact that the donee has failed to apportion the property within the class should not defeat the donor's intent to benefit the class. Accordingly the appointive property should pass to the class and an equal division of it among the members of the class seems to be the closest approximation to the intent of the donor." Vol. V, American Law of Property, § 23.63, Page 645.

Whether we adopt the first or the third theory, we reach the same result. We, therefore, conclude that upon the termination of the trust the estates of George F. Cressey, Helen C. Stanwood, Marcia C. Passage, and William R. Cressey are each entitled to one-fifth of the principal of the residue and Eleanor Roberts, or her estate, in the event she is then deceased, to the other fifth.

There are other factors which induce this decision. In the first place, George F. Cressey the original donee of the power is dead and the law appears to be that the donee's death terminates the power granted to him, where no one else is authorized to execute it by the grantor. 72 C.J.S., Powers, § 17. Moreover, in spite of the fact that a strict interpretation of the trust agreement entered into by the children of Charles R. Cressey and Eleanor Roberts would seem to indicate that any successor trustee was to be endowed with the same powers possessed originally by George F. Cressey, it is our opinion that the signers of the 1936 trust had no such intention; and certainly it was not the intention of the testator that a successor trustee, unnamed in the will, and now a corporate fiduciary, should have the power to determine many years after his death, who should be the objects of his bounty.

We, therefore, hold that upon the termination of the trust, the residue should be divided in five parts between the estates of the children of Charles R. Cressey and Eleanor Roberts, or her estate in the event of her prior decease.

At the termination of the trust, the trustee shall turn over, in the foregoing proportions, any personal property in its possession to the legal representatives of the estates of the four children of Charles R. Cressey, and to Eleanor Roberts or the legal representative of her estate; and shall convey by suitable instrument of transfer any real estate remaining in the trust, to the designated devisee or devisees in the wills of the children of Charles R. Cressey, or to their proper heirs at law, and to Eleanor Roberts, if she is alive, or to her designated devisee or devisees, or her heirs at law in the event of her death.

In answer to the question as to whether or not income from the residue should be accumulated or currently distributed, we have already indicated our answer, which is that distribution should be made in five equal shares to Eleanor Roberts and to the estates of the four children of Charles R. Cressey, subject always to prior payment of the annual amount due the widow. It is our opinion that any reference to distribution on the part of the parties to the trust agreement of 1936 had reference, not to a postponement of distribution of income, but to distribution of the principal assets in the residue at the time of the death of the testator.

All actions of the trustee in the administration of the trust or trusts are herewith approved and confirmed.

Counsel for all parties are to be commended for excellent briefs which have been of great help to this court.

*The cause is remanded to the Court below for the entry of a decree in accordance with this opinion. Counsel fees and expenses are allowed to all counsel, the amount thereof to be fixed by the Justice below, such costs and expenses to be prorated between*

*the assets in the trusts set up under the provisions of the second paragraph of the will and the trust set up under the provisions of the fourth paragraph of the will.*