FIDUCIARY TRUST CO., IN EQUITY
*vs.*
HOPE WHEELER BROWN, ET AL.

Kennebec.    March 9, 1957.

*Fogg & Fogg,* for plaintiff.

*John Huse,*
*Philip E. Lamb,*
*Locke, Campbell, Reid & Hebert,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

DUBORD, J.   This is a bill in equity brought by Fiduciary Trust Company of Boston, Massachusetts, sole successor trustee under a declaration of trust executed by Elizabeth S. Haynes and Robert H. Gardiner, on May 16, 1911, and amended on June 12, 1918. The bill is brought against Hope Wheeler Brown of Belfast, Waldo County, Maine, Man–

chester Haynes Wheeler of Augusta, Kennebec County, Maine, Muriel S. Haynes, Letitia Haynes and Honora Haynes all of Weston, Middlesex County, Massachusetts.

The principal of the trust was contributed by Elizabeth S. Haynes and at the time the trust was set up, Elizabeth S. Haynes had two natural daughters, the defendant, Muriel S. Haynes and Hope Manchester Wheeler. Hope Manchester Wheeler had a natural son born to her, the defendant, Manchester Haynes Wheeler. The defendant, Hope Wheeler Brown is the natural daughter of Manchester Haynes Wheeler, and was adopted by her grandmother, Hope Manchester Wheeler. The defendant, Muriel S. Haynes, adopted the defendants, Letitia Haynes and Honora Haynes. The three adoptions took place subsequent to the execution of the trust agreement and the amendment thereto. Two of the adoptions, including that of Hope Wheeler Brown, occurred after the death of Elizabeth S. Haynes and one of them occurred about one year before the death of Elizabeth.

The bill in equity alleges that the plaintiff, in its capacity as trustee, is uncertain as to how to distribute the income formerly payable to Hope Manchester Wheeler, and asks the court to construe and interpret certain provisions of the trust agreement executed by Elizabeth S. Haynes and Robert H. Gardiner.

The pertinent paragraph of the indenture of trust, which gives rise to uncertainty on the part of the trustee is paragraph 1, which reads as follows:

> "1. During the continuance of the trust to pay the net income thereof as often as quarterly to Hope Manchester Wheeler and Muriel Sturgis Haynes in equal shares during their lives, and on the death of either of them who shall leave issue surviving her the share of said income which she would have received shall be paid to such of her issue by right of representation as shall from time to time be liv-

ing at the respective times of payment and on the death of either of them leaving no issue surviving her as well as in the case of the issue of one of them becoming extinct, the whole of said income shall be paid to the other if living, or if she be dead to such of her issue by right of representation as shall from time to time be living at the respective times of payment."

As paragraphs 2 and 7 of the trust indenture, as well as the amendment thereto, may have some bearing upon the determination of the intention of the settlor of the trust, we insert them at this point.

"2. Twenty-one years after the death of the survivor of them and of Manchester Haynes Wheeler the principal of the fund whether said Elizabeth S. Haynes be then living or not shall be paid over to the persons and in the proportions to whom and in which it would then have been distributed under the intestate laws of Maine then in force if it had then been personal property and said Elizabeth S. Haynes had then owned it in her own right and had then died intestate."

"7. If it shall at any time happen after the death of either said Hope or said Muriel that a child of hers shall have attained the age of thirty years the trustees may at any time thereafter, but only if they are satisfied that it will be for the best interest of such child, pay to him or her out of the principal of the fund such sum or sums as they may deem expedient, making in case of such payment such division as they shall deem just thereafter of the income from the remainder of the fund."

Amendment. "If at any time before the termination of the trust as provided in said Declaration there shall be living no issue of mine, then I direct that the trust shall terminate and the property be divided, one-half, or, if there be then living no issue of my niece, Rebecca Russell Dallett, the whole, to go to the issue then living by right of representation of my brother, Horace Russell

> Sturgis, and the other half or, if there be then living no issue of my said brother, the whole, to go to the issue then living by right of representation of my said niece, and, if there be then living no issue of either my said brother or my said niece, the whole principal, whether I be then living or not, shall be paid over to the persons and in the proportions to whom and in which it would have then have been distributed under the laws of Maine then in force if it had then been personal property and I had then owned it in my own right free of trust and had then died intestate."

The bill in equity sets forth the provisions of the trust indenture about which doubt is expressed. The complete trust indenture is annexed to the bill, as an exhibit, and made a part thereof. Subsequently, the original bill in equity was amended by adding the alteration to the trust indenture.

The bill seeks instructions on the following points:

(a) Whether Hope Wheeler Brown, adopted daughter of Hope Manchester Wheeler, is entitled to share in the income as issue by right of representation of Hope Manchester Wheeler, or

(b) Whether Manchester Haynes Wheeler is entitled to the whole of said income formerly payable to his mother, Hope Manchester Wheeler; and

(c) Whether the two adopted daughters of Muriel S. Haynes will be entitled upon the death of their adoptive mother, to the share of the income payable to their adoptive mother, as the issue of said adoptive mother by right of representation.

All of the defendants filed answers joining in the prayer of the plaintiff for interpretation and instructions.

The defendant, Manchester Haynes Wheeler, in his answer, denies that Hope Wheeler Brown is the issue of

Hope Manchester Wheeler, who by right of representation is entitled to share in the income payable under the trust indenture and claims that he is entitled to the entire income formerly payable to his now deceased mother, Hope Manchester Wheeler. In his answer he also advances the contention that in the event of the death of Muriel S. Haynes, her adopted daughters Letitia Haynes and Honora Haynes, will not be entitled to the share of their adoptive mother on his theory that they are not issue by right of representation of Muriel S. Haynes.

The defendant, Muriel S. Haynes filed an answer alleging that Hope Wheeler Brown is entitled, during her lifetime, to one-half of the trust income formerly payable to Hope Manchester Wheeler; that Manchester Haynes Wheeler, during the lifetime of Hope Wheeler Brown, is not entitled to all of the trust income; and she further contends in her answer, that at her death, if either or both are living, her adopted daughters, Letitia and Honora Haynes, will be entitled to share in the trust income as her issue by right of representation.

The other defendants, Honora Haynes, Letitia Haynes, and Hope Wheeler Brown, filed similar answers in which they set up the contention that the adopted children are entitled to share in the trust income as issue by right of representation of their adoptive mothers.

In setting forth, in this opinion, the points upon which instructions are sought, and in briefly digesting the answers of the defendants, we have used the expression used by counsel for the plaintiff in its bill and by counsel for all the defendants in their answers, viz.: "Issue by right of representation." However, we point out that the legal question for our determination is whether or not the adopted children are "issue" of their adoptive mothers, within the intention of the settlor. In other words, taking as an example the case of Hope Wheeler Brown, if she is to share in the

trust income previously payable to Hope Manchester Wheeler, she will share, not by right of representation, but on equal terms with her father, as "issue" of Hope Manchester Wheeler, her grandmother and adoptive mother.

The expression "by right of representation," used by the settlor, of course, has a bearing on her general intention and this point we will discuss later in this opinion.

The case was presented to the court upon an agreed statement of facts, and is to be heard by this court on report under authority of Section 24, Chapter 107, R. S. 1954.

The only evidence for the consideration of this court is the indenture of trust, the amendment thereto and the agreed statement of facts.

The agreed statement of facts reads as follows:

> "Elizabeth S. Haynes and Robert H. Gardiner entered into an executed Declaration of Trust, dated May 16, 1911, a copy of which marked Exhibit A. is annexed to the bill which is a part of this agreed statement of facts. Elizabeth S. Haynes contributed the principal and was the settlor of the trust created by the said Declaration of Trust between herself and Robert H. Gardiner.

> "The said Elizabeth S. Haynes and Robert H. Gardiner executed an alteration or amendment to said Declaration of Trust, which alteration or amendment was dated June 12, 1918, a copy of which is included in motion of Fiduciary Trust Company to amend its bill in equity which motion and amendment is a part of this agreed statement of facts.

> "The said Elizabeth S. Haynes and Robert H. Gardiner are both deceased and Fiduciary Trust Company is the sole successor trustee of said Declaration of Trust as amended.

> "The said Elizabeth S. Haynes had two children born to her, namely, the defendant, Muriel S.

Haynes and Hope Manchester Wheeler, now deceased. Elizabeth S. Haynes died in 1925 and was survived by the said Muriel S. Haynes and Hope Haynes Wheeler.

"The said Muriel S. Haynes, who is still living, never married and has had no children born to her. She does have two adopted children, namely, the defendants, Letitia Haynes, born January 31, 1921 and Honora Haynes, born January 7, 1924. Letitia Haynes was adopted by her by decree of Kennebec Probate Court dated the fourth Monday of February, 1924. Honora Haynes was adopted by her by decree of said court, dated August 8, 1927.

"The said Hope Manchester Wheeler had but one child born to her, namely, the defendant, Manchester Haynes Wheeler, born on April 19, 1906.

"Before her death, however, and since the said Declaration of Trust, to wit, July 28, 1930, she legally adopted as her daughter, her granddaughter, Hope Wheeler Brown, born April 17, 1926. Hope Wheeler Brown is a daughter of the said Manchester Haynes Wheeler."

This court has jurisdiction in equity to determine the issue.

"Under equity practice and the specific provisions of Sec. 36, Subdivision 10, Chap. 91, R. S. 1930, (Now Section 4, Subdivision 10, Chapter 107, R. S. 1954,) the Supreme Judicial Court has authority to pass upon the questions raised by the presentation of a bill in equity seeking the construction and interpretation of the provisions of a trust indenture." *Porter* v. *Porter,* 138 Me. 1.

"Equity as a necessary adjunct to its control over trusts, has assumed jurisdiction to instruct or direct a fiduciary, whether an executor or a trustee, as to his duties in the administration of the estate committed to his care. The directions are given where the fiduciary is in doubt as to the proper performance of his duties because it is recognized that he should not in such cases be required

to act at his peril." *Moore* v. *Emery, et al.*, 137 Me. 259.

In order for this court to determine the issue or issues before it, it will be necessary for us to seek out the intention of Elizabeth S. Haynes concerning the provisions of the indenture of trust, which she executed. As the chronology of events may have an important bearing upon the issues, we reassemble the following history, taken from the agreed statement of facts. On April 19, 1906, Manchester Haynes Wheeler was born. He was the son of Hope Manchester Wheeler and, of course, the grandson of Elizabeth S. Haynes, the settlor. At that time, Elizabeth S. Haynes had another living daughter, Muriel S. Haynes. On May 16, 1911, Elizabeth S. Haynes executed the indenture of trust, and amended it on June 12, 1918. On January 31, 1921, Letitia, later to be adopted by Muriel S. Haynes was born and on January 7, 1924, Honora, later to be adopted by Muriel S. Haynes was born. In February 1924, Letitia was adopted by Muriel S. Haynes. Elizabeth S. Haynes died in 1925. It will be noted that Letitia was born ten years after the execution of the indenture of trust, and approximately two and one half years after the amendment of the trust indenture; that Honora was born thirteen years after the execution of the indenture of trust and approximately five and one-half years after the amendment. It will also be noted that Elizabeth S. Haynes, the settlor, died within approximately one year after the adoption of Letitia by Muriel S. Haynes. Hope Brown, the daughter of Manchester Haynes Wheeler, and the granddaughter of Hope Manchester Wheeler was born on April 17, 1926, or about fifteen years after the execution of the trust indenture, and about eight years after the date of the amendment. On August 8, 1927, Honora was adopted by Muriel S. Haynes, and on July 28, 1930, Hope Brown was adopted by her grandmother, Hope Manchester Wheeler. It will be noted that Hope Brown was born after the death of the settlor, and

that she, as well as Honora were adopted subsequent to the death of the settlor. On November 19, 1955, Hope Manchester Wheeler, the daughter of Elizabeth S. Haynes, and natural mother of Manchester Haynes Wheeler, and adoptive mother of Hope Brown, died.

At the date of the execution of the indenture of trust, the adoption statute then in force was Section 35, Chapter 69, R. S. 1903, and read as follows:

> "By such decree the natural parents are divested of all legal rights in respect to such child, and he is freed from all legal obligations of obedience and maintenance in respect to them; and, for the custody of the person and all rights of inheritance, obedience and maintenance, he becomes to all intents and purposes, the child of his adopters, the same as if born to them in lawful wedlock, except that he shall not inherit property expressly limited to the heirs of the body of the adopters, nor property from their lineal or collateral kindred by right of representation."

In 1918 when the trust was amended the adopting statute had been amended to read as follows:

> "By such decree the natural parents are divested of all legal rights in respect to such child, and he is freed from all legal obligations of obedience and maintenance in respect to them; and he is, for the custody of the person and right of obedience and maintenance, to all intents and purposes, the child of his adopters, with right of inheritance when not otherwise expressly provided in the decree of adoption, the same as if born to them in lawful wedlock, except that he shall not inherit property expressly limited to the heirs of the body of the adopters, nor property from their lineal or collateral kindred by right of representation; but he shall not by reason of adoption lose his right to inherit from his natural parents or kindred . . ." R. S., 1916, c. 72 § 38, as amended by P. L., 1917, c. 245.

The immediate problem is created by the fact that Hope Manchester Wheeler, one of the primary beneficiaries of the trust is now deceased. The contingency which gives rise to the uncertainty on the part of the trustee has arisen. Not so in the case of the other primary beneficiary, Muriel S. Haynes, who is still living. No contingency in respect to the adopted children of Muriel S. Haynes having arisen, we give our attention to the situation as it concerns Hope Wheeler Brown.

While this court may have the power to answer questions of construction of a will or trust indenture before a contingency occurs, *Haseltine* v. *Shepherd,* 99 Me. 495, we prefer to abide by the rule set forth in *Huston* v. *Dodge,* 111 Me. 246, 248. In this case, after asserting the right of this court to give instructions as to the proper mode of executing a trust, the court said:

> "And we do not think it wise, nor within the intent of statute, to assume jurisdiction to advise trustees, and to construe wills for their guidance until the time comes when they need instructions. The fact that the question may arise sometime in the future is ordinarily not enough. Such a question should not be decided until the anticipated contingency arises, or at least until it is about to arise, until it is imminent. Then if a trustee needs present advice to know how to meet the contingency, it will be given to him. Then the parties interested in the issue can be heard under the conditions and circumstances as they may exist at that time."

We therefore, propose to confine our instructions to the status of Hope Wheeler Brown.

The issue is to be resolved by this court by determining the intention of the settlor, Elizabeth S. Haynes. Our guiding principle must be to seek her intention and we mean her intention as expressed in the language used in the trust indenture and the amendment thereto. It is our function to

find not what she intended to say, but what she intended by what she did say.

> "It is an elementary, fundamental and prevailing rule, which must govern in the construction of a will, that the entire document should be carefully examined, parts compared with other parts, provisions considered with reference to other provisions, and from the whole instrument, from all that is disclosed . . . as well as from the precise language used to ascertain the intention of the testator." *Bryant, et al.* v. *Plummer*, 111 Me. 511.

> "The intention of the testator expressed in the will, if consistent with rules of law, governs the construction of the will. Intention must be found in the language of the will read as a whole illumined in cases of doubt by the light of circumstances surrounding its execution." *New England Trust Co.,* v. *Sanger*, 151 Me. 295, 118 Atl. (2nd) 760.

Applying these rules, our conclusions must be reached from the context of the trust indenture itself with particular attention given to the meaning of technical words and to prior decisions of this court and of courts in other jurisdictions upon the status of adopted children.

In this trust indenture, which we are called upon to construe, the settlor, after providing that the income should be paid in equal shares, to her two natural daughters during their lives, said:

> "And on the death of either of them who shall leave issue surviving her the share of said income which she would have received shall be paid to such of her issue by right of representation as shall from time to time be living . ."

The word "issue" as used in wills and in trust indentures is an ambiguous term. It has been given various interpretations by different courts depending upon existing statutes and varying circumstances. At this point, it is well to bear in mind that variations in interpretations may be due, in

large measure, to whether the settlor or testator was, himself, the adopting parent or whether the issue involved adopted children of persons other than the testator or settlor. As was said by this court in *Warren* v. *Prescott*, 84 Me. 483, at 487, "By adoption, the adopters can make for themselves an heir, but they cannot thus make one for their kindred."

> "It is well established in this state that the use of a technical word, in the absence of clear evidence to the contrary, leads to the presumption that the testator intended such word in its technical legal sense." *Jacobs* v. *Prescott*, 102 Me. 63, 65; *Houghton* v. *Hughes*, 108 Me. 233, 237; *New England Trust Company* v. *Sanger, supra.*

There is a long line of cases, which defines the word "issue" as prima facie meaning heirs of the body; that the term is synonymous with "descendants"; and that there is a presumption that a limitation in a trust to "issue" of a life beneficiary does not include children adopted by him. *Woodcock's Appeal,* 103 Me. 214; *Union Safe Deposit & Trust Company* v. *Dudley,* 104 Me. 297, at 306.

In *Trust Co.* v. *Dudley, supra,* the court quoted with approval this statement:

> "But the great weight of authority is that the word 'issue' in its general sense, unconfined by any indication or intention to restrict its meaning imports descendants."

In *Woodcock's Appeal, supra,* the court said:

> "Where a testator devises property to his own child by blood and then over to the 'child or children' of that child, if any, otherwise to others of the testator's blood, a child of the latter, by legal adoption only, is not included and takes nothing under the will, even though adopted before the making of the will."

"The word 'issue' primarily signifies lineal descendants by blood and unless the context of the will indicates otherwise, it does not include adopted children." *In re Baur's Will,* 128 N. Y. S. (2nd) 815, 818.

"Generally where provision is made in will for a child of some person other than testator, an adopted child is not included unless there is language in the will or circumstances surrounding testator which make it clear that adopted child was intended to be included, and fact that adoption was subsequent to testator's death raises presumption against intention to include adopted children. Generally, the term 'heirs' and 'issue' as well as 'children' and words of similar import in a will refer to natural and blood relationships and do not include an adopted child, in absence of circumstances clearly showing that testator so intended." *Copeland et al.* v. *Trust Company,* 188 S. W. (2nd) 1017 (Kentucky).

"In a will or deed of trust, word 'children' does not usually include an adopted child, notwithstanding a statutory provision investing an adopted child with right of inheritance from adopting parent, unless it is manifest from language of document and surrounding circumstances, that testator or settlor intended to include such child. The fact that the adoption is subsequent to death of testator whose will provided for 'children' of adopting parents raises a grave presumption against an intention to include such an adopted child within the class 'children.' " *Rhode Island Hospital Trust Co.* v. *Sack,* 90 Atl. (2nd) 436. (Rhode Island.)

There is an illuminating decision of this court, *Wilder* v. *Butler,* 116 Me. 389, which gives the general rule as to the rights of adopted children. The court said:

"Where one makes provision for his own 'child or children' by that designation he should be held to have included an adopted child since he is under obligation in morals, if not in law to make provision for such child. When, in a will provision is

> made for 'child or children' of some other person than the testator, an adopted child is not included, unless other language in the will makes it clear that he was intended to be included . . . In making a devise over from his own children to their 'child or children' there is a presumption that the testator intended 'child or children' of his own blood and did not intend his estate to go to a stranger to his blood. Blood relationship has always been recognized by the common law as a potent factor in testacy."

In this case now under our consideration the settlor executed the trust agreement long before the birth of all three adopted children. The adoptions, with one exception, took place after her death. The agreed statement of facts indicates that the settlor lived for approximately one year after the adoption of one of the children. It would seem that she was satisfied with the language she had selected when the trust agreement was entered into as well as when it was amended. Otherwise, if it was her intention to include adopted children, she could have changed the trust and provided for their inclusion. This right she had retained under the provisions of the fourth paragraph of the trust indenture.

The language she used in the first paragraph of the trust indenture "issue by right of representation" used in its technical sense means persons who could inherit her property under the statutes of descent.

To inherit by right of representation is synonymous with inheritance *per stirpes*. That is the expression used by the settlor. She did not change it at any time and it seems to us that she added strength to the legal interpretation of this expression by the second and seventh paragraphs of the trust indenture as well as by the amendment.

Bearing in mind the rule that in the absence of clear evidence to the contrary, there is a presumption that a technical word is to be construed in its technical legal sense, it

is logical to conclude that the settlor did not intend that adopted children should be construed as "issue" of the primary beneficiaries.

Under the provisions of paragraph two, distribution of the trust funds is to be made, twenty-one years after the death of the primary beneficiaries, and her grandson, Manchester Haynes Wheeler, under the intestate laws of Maine, as if such funds had been personal property and had been owned by the settlor in her own right and she had died intestate.

In accordance with paragraph seven, authority was given to the trustees to advance payments from the principal to a "child" of either Hope or Muriel, after the death of either Hope or Muriel. The decision in *Woodcock's Appeal,* 103 Me. 214, which held that an adopted child was not a "child" of the primary beneficiary would not permit these payments to an adopted child.

Moreover, the amendment dated June 12, 1918, emphasizes the intention of the settlor that the assets of the trust should eventually be distributed after the purposes of the trust had been accomplished, to lineal descendants who could inherit by law.

The words in the trust indenture, "by right of representation" help us only in trying to find the general intention of the settlor upon the question of whether or not adopted children should be considered as "issue." They have no other particular bearing on the present status of Hope Wheeler Brown. If she had a present right to any part of the income, she is entitled to it as "issue" of Hope Manchester Wheeler and she would not take "by right of representation." That expression would apply to her in relation to inheriting from her grandmother through her father, and we think that is the type of situation which Mrs. Haynes had in mind when she used the expression "issue by right of representation." For example, let us suppose Manchester Haynes Wheeler's

death preceded that of his mother and that when he died he was survived by brothers and sisters and by his daughter, Hope Wheeler Brown. Upon the death of Hope Manchester Wheeler, Hope Wheeler Brown would inherit her father's share by right of representation. It is our opinion that when the settlor used the words "by right of representation" she was looking into the future and had in mind a situation such as the example we have just set forth, uncomplicated by an adoption of a child by its own grandmother.

In the case of *In re Hoyt's Will,* 117 N. Y. S. (2nd) 167, the court in interpreting a Massachusetts will had this to say:

"Under Massachusetts law, where testamentary trust, which was established for testator's two daughters provided that if either daughter should die leaving lineal descendants, such daughter's share of trust income should be paid to such descendants 'by right of representation' and testator's daughter died leaving two children and five grandchildren, the quoted phrase meant that descendants of deceased heir would take same share its parent would have taken, if living, and the grandchildren whose parents were living were excluded."

It is evident that at the dates of the execution of the trust indenture and its amendment, an adopted child of someone, other than the person dying intestate, would not take under the then existing adoption statutes.

"Examination of the statute in question, (adoption statute) discloses that domestic or local adopted children do not take from lineal or collateral kindred of the adoptive parents by right of representation, in fact, adopted children are specifically denied that right." *Wyman, Appellant,* 147 Me. 237, at 244.

"If the will discloses an intention that the testator's property shall pass only to his descendants by blood, as, for example, by the use of the phrase 'issue of the body' or an express direction for a

taking by representation or a per stirpes distribution, it is clear that adopted children will not be included within the term 'issue'." 57 Am. Jur. § 1383, Page 921.

"But it is equally true that, in using the words 'heirs' and 'issue' with respect to Lemuel, he must be supposed to have used those terms as describing persons who would be heirs or issue according to the law as it would then be, and with such rights as the law as it then existed would or might give them in his estate under the provisions of his will. It is clear that, as the law stood at the time of the adoption and at the time of the death of Lemuel, the respondent Maude would not take under the will of Caleb Stowell as the heir or issue of Lemuel, unless it plainly appeared to have been his intention to include an adopted child of Lemuel. There is nothing to show that it does so appear. The words 'by right of representation' are inconsistent with such a construction, since they apply to lineal descendants only." *Blodgett* v. *Stowell*, 75 N. E. 138, (Mass.)

To determine the intention of the settlor when she executed the trust indenture, it is essential that we endeavor to view the situation in the light of circumstances existing on May 16, 1911. The record does not give us the age of the settlor at that time. Neither are we given the ages of her two daughters. However, we do know that Elizabeth S. Haynes had two natural daughters, Muriel S. Haynes, unmarried, and Hope Manchester Wheeler, married, and the mother of Manchester Haynes Wheeler. When the trust indenture was executed, the settlor's grandson, Manchester Haynes Wheeler was a boy only five years of age. It is comparatively easy to surmise that Elizabeth S. Haynes did not contemplate at that time that her daughter, Hope Manchester Wheeler would adopt a child, much less adopt the child of her own grandson, who was then only five years of age. There is nothing to show any change of mind when she amended the trust indenture in 1918, at which time Manchester Haynes Wheeler was only twelve years of age.

We are convinced by a study of the entire agreement and by applying the interpretation given in a long line of decisions of our court, supported by many similar decisions in other jurisdictions, to the words used by the settlor, that she set up the trust for the benefit of her two daughters and their natural issue. Mrs. Haynes had Manchester in mind as a beneficiary. He was then living and was mentioned by name in the indenture.

If Hope Wheeler Brown is to share at this particular time in the trust income, as issue of Hope Manchester Wheeler, the burden is on her to show that Elizabeth S. Haynes so intended. She has failed to sustain this burden.

True, she is a blood descendant of Elizabeth S. Haynes, the settlor, and, circumstances providing, she might ultimately inherit from her great grandmother, the settlor. Counsel for Hope Wheeler Brown advance the argument that because she is a blood grandchild of her adoptive mother, this fact places her in a stronger position than an adopted child, who is not a blood descendant. We do not subscribe to this contention.

That in this particular case, Hope Wheeler Brown happens to be a blood descendant of the settlor is of no consequence as to the real issue before us for determination. Undoubtedly, Hope Wheeler Brown, as the natural daughter of Manchester Haynes Wheeler, can inherit from her father, and she would also inherit from her adoptive mother, Hope Manchester Wheeler, but she cannot inherit from Elizabeth S. Haynes as adopted child of Hope Manchester Wheeler.

The basic issue is the intention of Elizabeth S. Haynes. She set up a trust for the benefit of her two natural daughters, and their issue. Manchester Haynes Wheeler was then living and was the issue of one of the primary beneficiaries of the trust. The settlor expected and intended that upon the death of Hope Manchester Wheeler, Manchester Haynes Wheeler and any brothers or sisters who might be born

later, and his natural issue, by right of representation, as well as the natural issue, of any brothers or sisters, by right of representation, would become the beneficiaries. If by adopting a grandchild, Hope Manchester Wheeler could create an additional beneficiary, because the adopted child happens to be a blood descendant, then she could adopt any number of lineal blood descendants and thereby reduce to a negligible amount the trust income which Manchester Haynes Wheeler was entitled to receive. We do not believe that such was the intention of the settlor.

We hold that Hope Wheeler Brown, during the lifetime of her father, Manchester Haynes Wheeler, is not entitled to any of the trust income previously payable to Hope Manchester Wheeler, and that Manchester Haynes Wheeler is entitled to the entire amount thereof during his lifetime. This conclusion is limited to a determination that Hope Wheeler Brown is not the "issue" of her adoptive mother, within the meaning and intent of the trust indenture we are asked to construe and interpret, and has no bearing or effect on any of the rights of Hope Wheeler Brown as a lineal descendant by blood of her great grandmother.

The carefully prepared briefs of counsel for all parties have been of great assistance to the court. These proceedings for the construction of the trust indenture being necessary for a proper disposition of the trust income, the expenses should be paid by the trustee from the body of the trust.

> *Decree to be made by the sitting Justice below in accordance with this opinion.*
>
> *The costs and expenses of each of the parties including reasonable counsel fees, to be fixed by the sitting Justice after hearing, and paid by the Trustee.*