JOHN H. GANNETT ET AL.
*vs.*
OLD COLONY TRUST CO., TRUSTEES, ET AL.

Kennebec.    Opinion, June 23, 1959.

*Sanborn & Sanborn,* for plaintiffs.

*Bingham, Dana & Gould* (Boston, Mass.),
*John E. Wiley,*
*Brooks Brown,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, DUBORD,
SIDDALL, JJ. (SULLIVAN, J. did not sit.)

WEBBER, J. On report. Plaintiffs seek interpretation of
the will of the late Guy P. Gannett, and specifically that
portion of the will which reads as follows:

> "The trust shall end upon the death of the last of
> Jean, John and Madeleine Jean and the trustees
> shall pay over the principal of the trust at that
> time by right of representation to *my issue* then
> living." (Emphasis ours.)

The problem arises from the fact that whereas Jean is
the natural daughter and Madeleine Jean the natural grand-
daughter of the testator, John is his adopted son. More-
over, John has children now living and who were living
when the testator executed his will. If issue of John survive
the stated contingency, will they qualify as takers (by right
of representation) in the capacity of "issue" of the tes-
tator? We answer in the affirmative.

The word "issue" does not have such a fixed and limited
meaning that it cannot vary with the intention of the tes-
tator who uses it. Within the four corners of the will itself
may be found substantial indication that when the testator
employed the phrase "my issue" he intended to include the
issue of his adopted son. He established three equal life

estates, one of which was for the benefit of "my son, John H. Gannett." The testator's failure to make any distinction between his adopted child and his natural children is significant. Moreover, in event of John's death, his issue were to take his share of the income for the duration of the trust which might easily continue for many years thereafter. It would appear most unlikely that the testator would thus provide income benefits for the issue of his adopted child which might be long extended, but in the next breath would cut them off completely from any share in the corpus. Any apparent inconsistency at once disappears if we but recognize that the testator thought of John as though he were a natural son and of John's issue then living as though they were the natural grandchildren of the testator. That such was his intention is fully confirmed by evidence of the circumstances existing at the time the will was made. The will was prepared for the testator by a competent attorney who was, however, unfamiliar with the testator's family circumstances and totally unaware of John's status as an adopted child. The testator's concern as expressed to his scrivener was for his "grandchildren" in which category he obviously included John's children toward whom he felt as great a love and affection as he entertained for those of his blood. The words "my issue" were selected by the scrivener in ignorance of any problem of adoption. They were adopted by the testator as words which would effectuate his intention to place the share of each of his children, including John, in the line of that child by right of representation. We are satisfied that any exclusion of John's issue from a share of the corpus was furthest from the testator's thought and purpose.

Seldom indeed is litigation involving the interpretation of a will conducted in such an atmosphere of family unity and affection as is apparent here. There is neither conflict nor dispute and all agree that in every aspect of family life

and family finances the testator regarded John as his natural son and treated him and the natural children with perfect equality. The quality of evidence so unselfishly furnished by those who have the most to lose cannot be lightly disregarded. It is apparent that in this case the testator, if he had been aware of any possible ambiguity in the use of the words "my issue," would have substituted therefor the words "their issue" in order clearly to effectuate his intention. The will as written should be so construed.

The guardian *ad litem,* in faithful discharge of his duty to bring to the attention of the court every possible adverse contention, has suggested that the court should not decide the questions raised in advance of the happening of contingencies which make it necessary to do so. If, for example, John should ultimately die without issue, no problem involving the interpretation of the words "my issue" would ever arise. That the court has on occasion refrained as a matter of judicial policy from prematurely deciding issues has been recognized. *Fiduciary Trust Co.* v. *Brown,* 152 Me. 360. It has never been questioned, however, that the court has power to act in an appropriate case before a contingency occurs. *Haseltine* v. *Shepherd,* 99 Me. 495, 503. We are satisfied that this is such a case. If decision must await the death of the last of John, Jean and Madeleine Jean, the court will lose the benefit of the testimony of the very persons who can best describe the circumstances which existed when the testator made his will. The scrivener, also, might then be unavailable to explain how the phrase "my issue" happened to be used. A decision now will eliminate the risk of a great injustice which might conceivably result if the court were compelled to act years hence in an evidentiary vacuum. Justice requires that we eliminate unnecessary delay. The entry will be

*Case remanded for a decree in accordance with this opinion.*

> *The costs and expenses of the guardian ad litem and each of the parties, including reasonable counsel fees, to be fixed by the sitting justice after hearing, and paid out of assets in the estate.*