FIDUCIARY TRUST CO., TRUSTEE U/W/O
SARAH G. SILSBEE
*vs.*
GERALD SALTONSTALL SILSBEE, ET AL.

Waldo.   Opinion, January 18, 1963.

*Pierce, Atwood, Scribner, Allen, and McKusick,*
by *Sigrid Tompkins* and *Fred C. Scribner, Jr.,*
for the Plaintiff

*Johnson, Clapp, Ives, and King,*
*Drummond and Drummond* by *Paul A. Wescott,*
*Verrill, Dana, Walker, Philbrick and Whitehouse,*
    by *John A. Mitchell,*
*Linnell, Perkins, Thompson, Hinckley, and Thaxter,*
    by *Franklin G. Hinckley* for the Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., retired before rendition of decision.

SULLIVAN, J. Action for the construction of a testamentary trust and for the authoritative determination of the mode of executing that trust. R. S., 1954, c. 107, § 4, X, as amended. The case comes to this court upon report. Rule 72, M. R. C. P., 155 Me. 573.

Sarah G. Silsbee, the testatrix and a resident of Maine, died on June 6, 1933. She was survived by a son, George S. Silsbee, by a daughter, Elizabeth Silsbee Law, and by a sister, Marian Gray Lewis. The son became deceased on August 21, 1961 and left no natural children or descendants by blood. The daughter and the sister aged 98 are living and are defendants in this action.

Sarah G. Silsbee made her will on October 5, 1928 and thereafter executed 3 codicils dated respectively June 3, 1930, June 8, 1932 and April 11, 1933. The will and codicils were proved and allowed in the Waldo County Probate Court on July 25, 1933. A controversy has evolved concerning the rational and just interpretation of specific terms and provisions contained in the residual disposition of the estate. The relevant text is worded as follows: (partition of clauses for visual purposes, ours.)

"All the residue of my property of every kind,

I give and appoint to the trustees hereinafter named in trust

to divide the same into as many shares as there shall be children of mine then living,

counting for one share the issue if any then living of each child of mine then deceased, or

if at my death one of my children shall have died leaving no issue then living

to set apart the whole fund for the other of my children if living or

if not

for his or her issue if any then living.

Each share so set apart for the issue of a child of mine

shall be paid over to such issue by right of representation free of trust.

Each share so set apart for a child of mine

shall be held in trust to pay the income thereof to such child during his or her life,

paying the same into his or her own hand or upon his or her own separate order or receipt to be drawn always from time to time as such income shall become payable and never by anticipation or by way of assignment and in no case subject to the interference, claims or control of any creditor or other person.

Upon the death of each child of mine for whom a share has been so set apart and held,

such share shall be paid over free of trust to the issue of such child then living by right of representation,

or if there is no such issue then living,

such share shall be added to the trust fund if any then held for the other of my children if then living

and if not

shall be paid over free of trust to the issue then living by right of representation of such other child of mine,

but if no issue of mine is then living

such share shall continue to be held in trust during the life of the survivor of my brothers and sisters and the income thereof paid in equal shares to all my brothers and sisters living from time to time

provided that the issue living from time to time of each brother or sister of mine then deceased shall take by right of representation the share such deceased brother or sister would have taken if living.

Upon the death of the survivor of my brothers and sisters      or

upon the subsequent death of the survivor of my two children,

if there is no issue of either of them then living,

the fund shall be paid over free of trust to my nephews and nieces then living taking per capita and not per stirpes

provided that the issue then living of each nephew and niece of mine then deceased shall take by right of representation the share such nephew or niece would have taken if then living."

Plaintiff is the sole successor trustee of the trust created by the residuary provisions just quoted.

On November 12, 1931, prior to his mother's death, George S. Silsbee, son of the testatrix, married. On May 16, 1933, subsequent to his mother's 3rd codicil of April 11, 1933 and before her death on June 8, 1933, George S. Silsbee in California legally adopted as his son, Gerald Warren Mead, natural son of George S. Silsbee's wife and born to her on August 24, 1922 during a former marriage. At the time of the adoption Gerald Warren Mead's natural father was alive and consented to the adoption. George S. Silsbee and his wife in the adoption proceedings executed an agreement that Gerald Warren Mead would be

" - - - - adopted and treated in all respects as their own issue should be treated - - - - "

The adoption decree read in pertinent part:

" - - - - that the said GERALD WARREN MEAD be adopted by the petitioners herein and that the said child henceforth be in the custody and regarded and treated, in all respects, as the child of George S. Silsbee and Ruth P. Silsbee, and hereafter bear the name of GERALD SALTONSTALL SILSBEE."

At the time of the execution of the will and codicils of Sarah G. Silsbee, at the date of her death and when Gerald Warren Mead was adopted by George S. Silsbee the adoption statute of Maine was identically, P. L., 1917, c. 245; R. S., 1930, c. 80, § 38.

The adopted Gerald Saltonstall Silsbee and his two children are defendants in this case.

Many defendants are nieces and nephews of the testatrix or descendants of nieces and nephews.

Anne Gilmour Grant and her children are defendants. Anne Gilmour Grant is an adopted daughter of Alice Fay Gilmour, a niece of the testatrix and also a defendant here.

Following the death of the testatrix in 1933 Elizabeth Silsbee Law and George S. Silsbee until his death in 1961, both equally enjoyed the income from the trust.

This proceeding seeks to ascertain if one-half of the principal of the trust formerly allocated to supply a life income to George S. Silsbee shall be added to the other one-half of the corpus and the whole res be held for the life income benefit of Elizabeth Silsbee Law or whether the one-half share of the principal formerly dedicated for the lifetime usufruct of George S. Silsbee must be paid over free of trust to adopted Gerald Saltonstall Silsbee as the "issue" of George S. Silsbee.

This court is further asked to whom the principal devoted to the lifetime income benefit of Elizabeth Silsbee Law who was born in 1893 and has no children or descendants, shall be distributed upon her demise.

To restate variantly the first inquiry: Is Gerald Saltonstall Silsbee within the purport of the will and codicils of the testatrix, Sarah G. Silsbee, the "issue" of his adopter, George S. Silsbee, and therefore entitled to take one-half of the trust res?

The resolution of such a question whenever possible is to be attained by effectuating the lawful intention of the testatrix if she has expressed one in the language of her testament construed as an entirety and as of the time of testamentary execution. *Gorham* v. *Chadwick,* 135 Me. 479, 482; *Cassidy* v. *Murray,* 144 Me. 326, 328; *Barnard* v. *Linekin,* 151 Me. 283, 286; *New England Trust Co.* v. *Sanger,* 151 Me. 295, 301, 302; *Fiduciary Trust Co.* v. *Brown,* 152 Me. 360, 368.

In *Wilder* v. *Butler,* 116 Me. 389, 391, this court said:

"- - - - The right of inheritance by the adopted child is a matter of statutory creation; the taking

under a deed or a will depends upon the intention of the grantor or testator, as revealed by the instrument itself construed in the light of the surrounding facts and conditions. Where the grantor or testator is the adopting parent it is reasonable to presume that the adopted child was within the intended bounty of such grantor or testator. But where he is a stranger to the adoption such presumption does not prevail - - - - ''

The following excerpt from the text of the testamentary trust is the subject matter and occasion of our primary question:

'' - - - - Upon the death of each child of mine for whom a share has been so set apart and held, such share shall be *paid over free of trust to the issue of such child* then living by right of representation, or

if there is no such issue living, such share shall be added to the trust fund if any then held for the other of my children if then living - - - - '' (Italics supplied.)

The decisive term "issue" as utilized by the testatrix - settlor has a prima facie or technical meaning of natural child or descendant by blood. *Woodcock's Appeal,* 103 Me. 214, 217; *Fiduciary Trust Co.* v. *Brown,* 152 Me. 360, 372. But, as it was said in *Gannett* v. *Old Colony Trust Co.,* 155 Me. 248, 249:

"The word 'issue' does not have such a fixed and limited meaning that it cannot vary with the intention of the testator who uses it - - - ''

In *Woodcock's Appeal, supra,* 217, it was held:

"When in a will provision is made for 'a child or children' *of some other person than the testator,* an adopted child is not included unless other language in the will makes it clear that he was intended to be included, - - - - - - - - - - - - - - - - In making a devise over from his own children to

their 'child or children' there is a presumption that the testator intended 'child or children' of his own blood, and did not intend his estate to go to a stranger to his blood. Blood relationship has always been recognized by the common law as a potent factor in testacy - - - - " (Italics ours.)

In *Fiduciary Trust Co.* v. *Brown, supra,* 372, this court said:

"There is a long line of cases, which defines the word 'issue' as prima facie meaning heirs of the body; that the term is synonymous with 'descendants'; and that there is a presumption that a limitation in a trust to 'issue' of a life beneficiary does not include children adopted by him - - - - "

In *Wilder* v. *Butler, supra,* 116 Me. 389, 394, we find:

" - - - - The gift over by the grantor in this trust deed, as by the testatrix in the will, was not to his own child or children but to the child or children of another party, William L. Wilder. Therefore the presumption is against the estate passing to the adopted son of William L. unless in other ways such clearly appears to have been the intention of the grantor. - - - - "

The burden of proof in this case rests upon the defendant, Gerald Saltonstall Silsbee, to establish that Sarah G. Silsbee contemplated a child by adoption in her use of the term "issue." *Wilder* v. *Butler,* 116 Me. 389, 396: *Fiduciary Trust Co.* v. *Brown,* 152 Me. 360, 378. The latter case at page 374 affirms that "issue" is a "technical word" and that in the absence of "clear evidence" of a contrary intention on the part of the testatrix "there is a presumption that a technical word is to be construed in its technical legal sense": *New England Trust Co.* v. *Sanger,* 151 Me. 295, 302.

The evidence in the record of the case at bar is completely negative as to whether or not Sarah G. Silsbee, the testatrix, ever knew of the adoption of Gerald Saltonstall Silsbee by

her son, George S. Silsbee. There is no information that the testatrix was acquainted with or enjoyed any relations with Gerald Saltonstall Silsbee.

This court in *New England Trust Co.* v. *Sanger*, 151 Me. 295, 307 made this observation:

> "When parties reasonably disagree on the meaning and intention of a testator who has made a complicated will, the court must determine from the words in the will the probable intention. Courts can only deal in probabilities where intention is in question, but if there is doubt or ambiguity, evidence outside the will may assist in finding the probabilities."

For want of proof to the contrary, common understanding of human nature and an average experience with it afford us an indigenous and ingenerate probability. A normal mother would rarely be reconciled — much less desire — that her son through the adoption of a child stranger to her blood and possessing a living natural father, should thereby effect a diversion from her own daughter and foreseeably from her own sister of one-half of this trust income upon the son's death and preclude her blood kin from any derivative participation in one-half of the trust corpus. It is possible that a mother under special circumstances absent from this case might will such eventualities. But upon the record here the intrinsic probability is abiding. The conventional and technical language of this testamentary trust is, without more, insufficient to afford a basis for the unnatural and exceptional interpretation that Gerald Saltonstall Silsbee takes the one-half share of the trust principal set apart for a lifetime income to his adopter and foster father. In accordance with the provisions of the testamentary trust such one-half share of the res will be added by the trustee to the fund for the life benefit and usufruct of Elizabeth Silsbee Law who is also entitled to the net in-

come attributable to the added one-half share since the death of life incumbent George S. Silsbee.

The remaining question propounded to this court is tantamount to a request for instructions as to the mode of executing the testamentary trust after the death of Elizabeth Silsbee Law.

All parties necessary and proper are included here and their number is very large. All persons with special knowledge of facts pertinent in this controversy, we can assume, have been availed of or at least have been available to the parties. Any doubts there may be for allayment, the elimination of added litigation, the obviation of further expense to the trust and persons in interest and an assuring prospect of exhausting the remaining contingencies in the estate are considerations which with other recited factors decide this court to entertain the second question posed, as permissible and answerable.

*First Portland National Bank* v. *Rodrique,* 157 Me. 277, 285; *Gannett* v. *Old Colony Trust Co.,* 155 Me. 248, 251.

Upon the death of Elizabeth Silsbee Law the trust principal free of the trust shall be paid to her surviving natural child or children equally, any natural child or children of a deceased child taking by right of representation. Should Mrs. Law die childless but with descendants of her blood the trust fund shall be paid free of trust to such descendants by right of representation.

Upon the death of Elizabeth Silsbee Law if she shall have left surviving her no natural child or children or descendants by blood there will be two possible alternatives.

1. Should Marian Gray Lewis, sister of Sarah G. Silsbee, testatrix-settlor, outlive Elizabeth Silsbee Law, the trust shall endure during the lifetime of Marian Gray Lewis and the income during that period shall be paid by the

trustee in equal shares to Marian Gray Lewis and by right of representation to living issue by blood of the already deceased brothers and sisters of the testatrix-settlor. Upon the death of Marian Gray Lewis, the trust principal shall thereafter be paid, free of the trust to the living nephews and nieces by blood of Sarah G. Silsbee per capita and not per stirpes, the living issue by blood of predeceased nephews and nieces taking by right of representation the share such deceased nephew or niece if living would have taken.

2. Should Marian Gray Lewis have predeceased Elizabeth Silsbee Law, then the trust principal upon Elizabeth's death shall be paid, free of the trust to the living nephews and nieces by blood of Sarah G. Silsbee per capita and not per stirpes, the living issue by blood of deceased nephews and nieces taking by right of representation the share such deceased nephew or niece if living would have taken.

The testamentary trust and the case record with respect to the collateral relatives of the testatrix-settlor, Sarah G. Silsbee, discover no expressed intention of the testatrix-settlor to include in her contingent bounty adopted nephews or nieces or any descendants of nephews or nieces through adoption.

The mandate shall be:

> *Case remanded for a judgment in accordance with this opinion. The costs and expenses of the plaintiff, of the guardians ad litem and of each of the parties, including moderate counsel fees, to be fixed by the sitting justice after hearing, and paid from the assets of the trust estate.*