CANAL NATIONAL BANK

v.

Edward D. NOYES, III, et al.

Supreme Judicial Court of Maine.

Dec. 3, 1975.

Verrill, Dana, Philbrick, Putnam & Williamson by John A. Mitchell, Portland, for plaintiff.

Pierce, Atwood, Scribner, Allen & McKusick by Jotham D. Pierce, Everett P. Ingalls, III, Bernstein, Shur, Sawyer &

Nelson by Sumner T. Bernstein, Richard P. LeBlanc, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

■ This action for declaratory judgment was brought pursuant to M.R.C.P., Rule 72 by the Canal National Bank as trustee of an inter vivos trust for determination of the proper disposition of the excess income generated by that trust.[1] The defendants are Althea G. Noyes (the Settlor's first wife) with the three sons of their marriage and Beatrice M. Noyes (the Settlor's second wife) with the daughter of their marriage and Canal Bank in its capacity as executor of the will of the Settlor. A Justice in the Superior Court ordered the matter reported to us upon the complaint, answers, and an agreed statement of facts.

On March 1, 1949, Edward Deering Noyes, Jr. (the Settlor) was divorced from his then wife, Althea G. Noyes. As part of the financial arrangements entered into by the parties prior to the divorce hearing, the Settlor created on February 24, 1949, the trust which is the subject of this controversy. The trust was administered by the plaintiff, Canal National Bank, who was to pay to Althea G. Noyes $2,500.00 quarterly until her death or remarriage. Althea G. Noyes is alive and has never remarried. The trust was funded with assets having a market value of $200,037.50, and the expected return on normal trust investments at that time was approximately 4%.

The trust instrument provided that in the event the income of the trust was insufficient to allow the trustee to make the quarterly payments, the Settlor would pay into

the trust an amount sufficient to meet the quarterly payments of $2,500.00 without any encroachment upon the trust principal. It was further provided that in no event were payments to exceed $10,000.00 in any one year. In 1949, the Settlor contributed $1,441.94 to the trust and, during 1950, the sum of $1,329.41, in order to allow the trustee to make the required quarterly payments.

During the 1950's and 1960's, the value of the trust principal grew and the income produced by the principal soon exceeded the required income payments. The income in excess of the amount necessary to pay the annuity to Althea G. Noyes has been held in a separate account which was, in turn, reinvested to produce additional income. None of this income was paid to the Settlor during his lifetime. The present value of this excess income account is over $85,000.00, and the current estimated income of the trust principal is $18,000.00 annually.

The trust did not provide for the distribution of either excess income or principal from the trust until after the death or remarriage of Althea G. Noyes, an event which has not yet occurred. Following the death or remarriage of Althea G. Noyes, the net income was to be paid to the Settlor for his lifetime. Upon his death, the entire trust property was to be divided and distributed among the three sons, or issue of deceased sons, of the marriage of Settlor and Althea G. Noyes.

Shortly after the marriage of the Settlor to Beatrice M. Noyes (now Beatrice M. Kelley), he executed a will dated June 30, 1949, in which he left the residue of his estate in trust for the benefit of his then wife, Beatrice M. Noyes, with a provision for distribution of the trust upon the death of Beatrice M. Noyes, one-half to the issue of the marriage of the Settlor to Althea G.

---

1. The Canal National Bank as plaintiff acts as shareholder of the excess income. This Court has jurisdiction under M.R.C.P., Rule 72(b) of actions reported to it wherein trustees seek instructions as to the distribution of the trust fund. *In re Estate of Cassidy*, Me., 313 A.2d 435 (1973).

Noyes and the other one-half to the issue of the marriage of the Settlor to Beatrice M. Noyes. Defendants Edward Deering Noyes, III, John M. Noyes and Nicholas Noyes are the three sons of the marriage of the Settlor to Althea G. Noyes. One daughter, now Anna Noyes Benoit, was born of the marriage of the Settlor to Beatrice M. Noyes and is now receiving income from the second one-half of the trust. Following the Settlor's death in 1963, his widow waived the provisions of the will and claimed her statutory share in lieu thereof.

The various parties have made claims upon the accumulated excess income account. Althea G. Noyes and Edward Deering Noyes, III, John M. Noyes, and Nicholas Noyes (the remaindermen) argue that the accumulated excess income should become a part of the trust principal to further safeguard the $10,000.00 annual annuity to Althea G. Noyes. On the other hand, Defendants Beatrice M. Kelley and the estate of the Settlor claim that this excess is unrelated to the purpose of the trust and must, therefore, revert to the estate of the Settlor. The only issue before this Court, then, is whether the trustee shall be instructed to (1) add to the principal of the inter vivos trust all the excess accumulated income now held in a separate account and any future income earned by the trust in excess of the amount to be paid to Althea G. Noyes, or (2) to pay over the present and future excess to the estate of the Settlor.

■ The general rule governing the disposition of trust income in excess of the amount necessary to fulfill the purpose of the trust is that such income reverts to the Settlor or his heirs under a resulting trust in the absence of manifestation of an intent that it be disposed of otherwise. *New Haven Bank v. Hubinger*, 117 Conn. 417, 167 A. 914 (1933); I G. Bogert, Trusts and Trustees, § 469 (2d ed. 1962); II A. Scott, Trusts § 430.2 (3d ed.). The rationale of this rule has been explained as follows:

"The reasoning behind this is that the Settlor did not part with his money absolutely out and out but only *sub modo* to the extent that his wishes, as declared by the trust, shall be carried into effect. When, therefore, this has been done, any surplus still belongs to him. This doctrine does not rest, . . . on any evidence of the state of mind of the Settlor, for in the vast majority of cases no doubt he does not expect to see his money back; he has created a trust which, so far as he can see, will absorb the whole of it. The resulting trust arises where the expectation is, for some unforeseen reason, cheated of fruitation and is an inference of law based on afterknowledge of the court." Re Gillington Bus Disaster Fund, 1 All E.R. 37, 41 (1958).

■ Of course, any manifestation of an intention by the Settlor to make some contrary disposition of the excess income will control this Court's decision as far as possible. *Fiduciary Trust Co. v. Brown*, 152 Me. 360, 131 A.2d 191 (1957). The most natural repository of this intent is the trust instrument itself. *Bryant v. Plummer*, 111 Me. 511, 90 A. 171 (1914); *In re Estate of Hartt*, 88 Ill.App.2d 146, 232 N.E.2d 231 (1967). If the instrument itself does not clearly reveal the intent of the Settlor, the Court may then consider the circumstances surrounding its execution. *New England Trust Co. v. Sanger*, 151 Me. 295, 118 A.2d 760 (1955). Finally, the Settlor's subsequent conduct may be examined to illuminate his intent at the time the ambiguous instrument was created. *Helfrich's Estate v. C.I.R.*, 143 F.2d 43 (7th Cir. 1944); *Gorey v. Guarente*, 303 Mass. 569, 22 N.E. 2d 99 (1939).

Our charge to effectuate the intent of the Settlor notwithstanding, we think that in the instant case the Settlor, Edward Deering Noyes, Jr., either failed to antici-

pate the possibility of excess income or did not deem such income sufficiently important to provide for its disposition. Moreover, the extrinsic evidence does not warrant any factual conclusion as to that disposition toward which the Settlor, had he considered the matter, would most naturally have inclined. We will therefore resolve the issue as a question of law.

The trust instrument establishes procedures for curing income *deficiencies* arising both before and after the Settlor's death, but establishes no parallel procedures for excess income. It designates the Settlor as the income beneficiary upon the death or remarriage of Althea G. Noyes and, with great thoroughness regarding the failure of any beneficiary, provides for the ultimate disposition of the trust property upon the death of the Settlor. The trustee is given full power to sell, exchange or encumber the trust property and to invest and reinvest the property in any manner it deems suitable; to determine what part of the trust property constitutes income and what part principal; and to determine which expenses will be charged against income and which against principal. The instrument permits the Settlor, or any other person, with the consent of the trustee, to add to the trust property. The trust goes so far as to provide for the treatment of income from bonds delivered to the trustee at the time of execution.

■ In ascertaining the state of mind of the Settlor at the time the trust was executed, this court makes no claim of certainty. Nevertheless, in light of the elaboration and detail with which the instrument addresses the future disposition of the trust property, particularly in regard to future income deficiencies, and the thoroughness with which it treats other matters pertaining to trust income, we conclude from the absence of any language either authorizing the accumulation of any income in excess of the annuity to Althea G. Noyes or specifically disposing of such income that it is more probable than not that

the Settlor simply did not anticipate the possibility of such income.

The trust does mention accumulated income in article 7(c), dealing with trusts for children under the age of 25, by specifically authorizing the trustee, after the death of Althea G. Noyes, to accumulate income for the income beneficiaries. We think that by his authorization for the accumulation of income in this section, the Settlor's failure to do likewise in the provision for the annuity to his former wife is additional evidence of his failure to anticipate the possibility of income in excess of that annuity. Article 7(c) speaks to a situation beyond the term of the annuity and the Settlor's provision for accumulated income in *that* case rather strongly suggests that he did not consider the possibility of excess income during the term of the annuity.

Our conclusion that the Settlor failed to anticipate any excess income does not, in itself, dispose of the issue of where that income is to be directed. The case law of this and other jurisdictions is replete with judicial admonitions that the court may not rewrite a trust by supplying an omission made through the oversight of the Settlor. *E. g. First Portland National Bank v. Kaler-Vaill*, 155 Me. 50, 151 A.2d 708 (1959); *First National Bank of Chicago v. Wilmot*, 3 Ill.App.3d 128, 278 N.E.2d 204 (1972). This Court has previously expressed this rule by stating that it is our function "to find not what [the Settlor] intended to say, but what she intended by what she did say." *Fiduciary Trust Co. v. Brown*, 152 Me. 360, 371, 131 A.2d 191, 197 (1957). Nevertheless, when faced with omissions similar to the one before us, other courts have written in the excluded disposition under the rationale that the addition was consistent with the general scheme of the trust. *Hartford National Bank and Trust Co. v. Yearly Meeting of Friends*, 137 Conn. 648, 81 A.2d 104 (1951); *Stempel v. Middletown Trust Co.*, 127 Conn. 206, 15 A.2d 305 (1940). Such cases did not in-

volve any judicial interpretation of the Settlor's intent regarding the disposition of excess income, for no intent was expressed. Rather, the courts were determining what the Settlor would have done had he anticipated the situation there addressed by the courts. Still other courts have perceived omissions as ambiguities subject to judicial "construction". *Furchtgott v. Young*, 487 S.W.2d 301 (Tenn.1972). These results are achieved not through any inference of law, but through a factual inference based upon the presumed intention of the Settlor concerning events that he may not have anticipated and for which he has not, in any event, provided.

The meager clues to the Settlor's probable intentions are conflicting and confusing. For example, that the Settlor personally guaranteed any deficiencies in the annuity to his former wife and, during his life, was to be the only income beneficiary of the trust permits the inference that, had the possibility of excess income been anticipated by the Settlor, he would have directed that the excess be paid to him. Directly contrary to this inference is the Settlor's conduct subsequent to the creation of the trust; during his life he was never paid nor, as far as the record shows, ever made any claim to the excess income which amounted to nearly $20,000.00 upon his death. We could, moreover, conclude that because all remaining beneficial interests, after the Settlor's death and the satisfaction of the obligation to his former wife, were to go to his sons by that marriage, the purpose of the trust was to benefit the Settlor's first family. This purpose would, of course, be frustrated by allowing the excess income to go to his then undetermined heirs problematical of a possible second marriage. Yet this conclusion would be inconsistent with the Settlor's retained life income after the death or remarriage of his former wife, a provision which suggests that the Settlor wanted any excess

income returned to him. We have many trials but few signposts. Indeed, the remaindermen and the estate so persuasively argue the presumed intent of the Settlor as it accords with their respective positions that this Court cannot rationally favor one interpretation of the facts over the other.

■ We prefer in this case to apply the general rule, which directs that the income in excess of the amount necessary for the annuity to Althea G. Noyes return to the estate of the Settlor, Edward Deering Noyes, Jr., by way of a resulting trust. This resulting trust arises through an inference of law and not through any evidence of the Settlor's state of mind.

Our instant application of the rule should not suggest that we would not, in future cases, follow evidence that leads us to a contrary conclusion about a Settlor's state of mind. The problem in the present case is that any attempt to reconstruct that state of mind is frustrated by our inability to unify the evidence before us into a single consistent pattern.

■ We therefore hold that the Settlor, Edward Deering Noyes, Jr., failed to anticipate the possibility that the trust established February 24, 1949 would generate income in excess of the annuity to Althea G. Noyes; that the evidence does not manifest a consistent pattern of disposition upon which this Court could reconstruct the Settlor's presumed intent; that as a matter of law all accumulated net income now held in separate account by the trustee and any future income earned by the trust in excess of the amount to be paid to Althea G. Noyes reverts to the estate of the Settlor under a resulting trust; and that such resulting trust be paid over to Beatrice M. Kelley as widow and to the Canal National Bank as executor under the last will and testament of Edward Deering Noyes, Jr.[2]

2. Under the terms of this trust and of the Settlor's will, potential widows and issue of the Settlor's sons and/or potential issue of

the Settlor's daughter may, upon the predistribution death of a parent beneficiary or parent-legatee, share in the distribution of

The entry will be:

Case remanded to Superior Court for further action in accordance with this opinion and for determination of appropriateness for orders of counsel fees and other reasonable costs.

All Justices concurring.

POMEROY, J., did not sit.

the excess income now under consideration in amounts which would be determined by our decision. No guardians ad litem were appointed below to protect the interests of these persons unknown or not in being. However, these contingent interests are identical to those of the Settlor's sons and daughter who participated in this proceeding as parties and were virtually represented. *Andrew M. Chaplin, Appellant*, 131 Me., 446, 451, 163 A. 774, 777 (1933).

After fully considering the totality of the circumstances involved, in the light of the principle we recently announced in *Canal National Bank v. Old Folks Home Association of Brunswick*, Me., 347 A.2d 428, 442 (1975), we concluded that these unknown persons are not "indispensable" parties (M.R. C.P., Rule 19(a), (b)) and that "in equity and good conscience" we should not discharge the report but should proceed with adjudication.