James A. **MOONEY**, Guardian of Ruth Dunning

v.

**NORTHEAST BANK & TRUST CO.**

v.

**HOME FOR AGED WOMEN** and Bangor Children's Home.

Supreme Judicial Court of Maine.

Sept. 30, 1977.

---

Gross, Minsky, Mogul & Singal, P. A., by George Z. Singal, Nathan Dane III, Bangor, for plaintiff.

Twitchell, Bray & Linscott by Kenneth L. Jordan, Jr., Orman G. Twitchell, Bangor, for Northeast Bank.

Eaton, Peabody, Bradford & Veague by Calvin E. True, Arnold L. Veague, Bangor, for third-party defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

POMEROY, Justice.

Plaintiff, as guardian for Ruth Dunning, brought this action in Penobscot County Superior Court. He alleged that the defendant breached its fiduciary duty when it distributed the principal of a trust created by Frances Triplett. The defendant Bank denies the plaintiff's allegations and has brought a third-party action against the distributees of the trust principal, seeking reimbursement if the defendant/third-party plaintiff is found liable to the plaintiff on his claim. *See* Rule 14, M.R.Civ.P. With all parties agreeing, the presiding justice, being of the opinion that this case involves important questions of law, ordered this action reported to the Law Court upon the pleadings and a stipulated statement of facts. *See* Rule 72, M.R.Civ.P.

We find for the defendant in the original action and thus need not consider the third-party action.

In December 1949 Frances Triplett established a revocable inter vivos trust for the benefit of several family members. The settlor, Mrs. Triplett, conveyed her one-sixth interest in two parcels of real estate and certain personal property to cotrustees, the defendant's predecessor in interest and Harold Marsh. Marsh died prior to distribution of the trust principal.

The trustees were given the power to manage and sell the real estate. The trustees were to pay periodically the income from the trust to the settlor for life, then to the settlor's sister for her life, and then to the settlor's husband for life. On the death of the survivor of the three life tenants, the trust instrument provided the trust would terminate. The trustees were directed that when the trust terminated, they were to convey "all interest in real estate which shall *then* be in the principal of said trust" (emphasis added) to John Dunning, the settlor's cousin. Further, it was directed that "all of the property remaining as principal and any remaining income" be paid to the third-party defendants.[1]

In January 1950 the settlor's sister died, leaving the settlor an additional one-sixth interest in the two parcels of real estate which then comprised part of the trust principal. In August 1950 the settlor conveyed her newly acquired one-sixth interest to the trustees. The trustees, at that point, held a one-third interest in the real estate.

In July 1953 the settlor amended the terms of the trust to exclude her deceased sister as a life tenant and substituted the settlor's cousin, Ruth Dunning, in place of John Dunning as the remainderman with an interest in the real estate. The settlor died in 1953 following execution of the amendment.

In 1965 one of the two parcels of real estate was sold to the Urban Renewal Authority after having been targeted for condemnation. In 1967, the remaining parcel of real estate was sold to a private party because the property had become nonincome-producing. This action does not question the propriety of either sale.

The proceeds from the sale of both parcels were not reinvested in real estate but rather became general funds of the trust.

In November 1972 the last life tenant died. The entire trust principal was distributed to the third-party defendants when the final distribution was made on March 20, 1973.

This action was brought because the plaintiff, in his capacity as guardian of Ruth Dunning, received nothing in the final distribution.

The issue of the proper distribution of the trust principal must be resolved by determining the settlor's intention. *Babb v. Rand,* Me., 345 A.2d 496 (1975) (interpretation of a will); *Norway National Bank v. Oates,* Me., 297 A.2d 898 (1972) (will); *Fiduciary Trust Co. v. Brown,* 152 Me. 360, 131 A.2d 191 (1957) (trust). The settlor's intention must be determined first by analyzing the entire instrument. *Iozapavichus v. Fournier,* Me., 308 A.2d 573 (1973) (will); *New England Trust Co. v. Sanger,* 151 Me. 295, 118 A.2d 760 (1955) (will). Extrinsic evidence, such as the circumstances of the settlor at the time the trust was executed, may be introduced to determine the settlor's intention *only* if the language of the instrument is ambiguous. *Canal National Bank v. Noyes,* Me., 348 A.2d 232 (1975) (trust); *Babb v. Rand, supra; National Newark & Essex Bank v. Hart,* Me., 309 A.2d 512 (1973) (will). In other words, we can consider extrinsic evidence only if the language of this instrument is susceptible to more than one reasonable interpretation.

The trustees were empowered to "sell and convey said real estate by appropriate deeds . . . ." The settlor placed no restrictions, within the instrument itself, on the trustees' exercise of the power to

[1]. The remaindermen under this clause of the trust were originally the Bangor Children's Home and the Home for Aged Women. On a motion for substitution of party pursuant to Rule 25, M.R.Civ.P., the Phillips-Strickland House Corporation was substituted as a party in place of the Home for Aged Women.

sell. At the termination of the trust, the trustees were directed to "convey all interest in real estate which shall *then* be in the principal" (emphasis added) to the plaintiff's ward. At the death of the last life tenant, there was no real estate "then . . . in the principal" and therefore the plaintiff received no real estate.

We find nothing in the language of the trust instrument that supports an interpretation which requires the trustees to reinvest the proceeds of any sale back into real estate. The language "real estate which shall *then* be in the principal" (emphasis added) refers only to the parcels that remained unsold when the trust terminated. The only reasonable interpretation of the trust instrument is that it empowered the trustees to sell the real estate if, as in this case, the trustees considered it necessary to preserve the value of the trust principal.

If we were to examine extrinsic evidence and conclude that the settlor intended that the proceeds be reinvested in real estate to preserve the plaintiff's interest, we would be rewriting the trust to include a clause that is not there. This we cannot do. As this court stated in *Fiduciary Trust Co. v. Brown, supra:*

> "It is our function to find not what she intended to say, but what she intended by what she did say." 152 Me. at 370–71, 131 A.2d at 197.

The distribution was correct according to the language used by the settlor.

The entry must be:

Judgment for the defendant on the original action.

Dismissal of the third-party action.

DELAHANTY, J., did not sit.

All Justices concurring.